478

[No. 17856-1-III.  Division Three.  April 20, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. RAYMOND MICHAEL MAY, *Appellant*.

*Kevin L. Holt*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Sylvia T. Cornish, Deputy*, for respondent.

SCHULTHEIS, J. — Raymond May appeals his convictions for delivery of methamphetamine (three counts), for possession of amphetamine, and for unlawful possession of a firearm. He contends the court erred when it permitted witnesses to testify about what a woman who lived with him told them about his alleged involvement in drug dealing. According to Mr. May, ER 801(d)(2)(v), which provides that statements by coconspirators are not hearsay, does not apply here because the State did not prove that he and the woman conspired to sell drugs. Mr. May also assigns error to the court's refusal to give his proposed jury instruction that unwitting possession is a defense against the charge of unlawful possession of a firearm. Mr. May argues that the absence of such an instruction allowed the jury to convict him on this charge without considering evidence that he did not know the gun was in his residence. We affirm Mr. May's convictions for delivery and possession of drugs, but reverse his conviction for unlawful possession of a firearm.

Evidence at trial established that in 1997 officers with the Tri-Cities Metro Drug Task Force arranged for confidential informant Karen Bohling to make three controlled buys of methamphetamine at Mr. May's residence. They employed controlled buy procedures designed to ensure that Ms. Bohling, in fact, secured the drugs she returned with, from Mr. May's residence.

Based upon those controlled buys, the Task Force obtained a search warrant for Mr. May's residence. There, they found methamphetamine, a gun, and drug paraphernalia. They arrested Mr. May, who was present at the residence during the search. The officer who transported Mr. May to jail observed him making some unusual movements in the back of the patrol car. When he investigated after Mr. May got out of the vehicle, he found a baggie containing amphetamine on the seat. The State subsequently charged Mr. May with three counts of delivery of methamphetamine, one count of possession of amphetamine, unlawful possession of a firearm, and bail jumping. The State charged Mr. May with the latter offense when he failed to appear at a scheduled court hearing on the other charges.

In their trial testimony, Detective Karl S. Goering and Ms. Bohling described the controlled buys at Mr. May's residence. Ms. Bohling stated she first tried to purchase methamphetamine there in August 1997. Desiree Baron answered the door. Ms. Bohling and Ms. Baron were acquaintances. Ms. Bohling told her she wanted to buy methamphetamine. In Ms. Bohling's presence, Mr. May told Ms. Baron that he had no drugs available at that time. On August 29, Ms. Bohling returned. Ms. Baron went to the basement of the house, and returned with Mr. May. He sold her $90 worth of methamphetamine.

On October 9, 1997, Ms. Bohling successfully concluded a second controlled buy at the residence. Again, her first contact was with Ms. Baron. Mr. May was in the bathroom. Ms. Baron went there to talk to him, and Ms. Bohling followed her and stood behind her in the hallway outside the bathroom door. Ms. Bohling could not hear what Mr. May said, but she heard Ms. Baron ask him for the methamphetamine. Ms. Baron then took her down to the basement. When she and Ms. Baron reached the computer room/office, Ms. Baron turned around, handed her the drugs, and took Ms. Bohling's money, which she placed on the computer desk. Ms. Bohling testified that she did not see Ms. Baron stop to pick up anything from the point they left Mr. May in the bathroom to the point at which she turned and handed her the drugs.

The final controlled buy took place on October 14, 1997. When Ms. Bohling entered the house, she heard Mr. May yell from the basement, asking who was at the door. Ms. Baron answered, "Karen." Ms. Baron went downstairs. Ms. Bohling heard Mr. May say, "Here. Give it to her and get her the f[---] out of here." Ms. Baron returned to the main floor and gave her the methamphetamine. The Task Force executed a search warrant at the residence immediately after Ms. Bohling left.

In the search, the officers seized cash that they identified as the money Ms. Bohling used to buy the methamphetamine. They also seized baggies with residuals of methamphetamine and syringes and a gun from a black bag located near the desk in a basement computer room/office. Detec-

tive Goering testified that he advised Mr. May of his constitutional rights, then asked him if any firearms were in the house. Mr. May answered that he was not sure whether any were there at that time. Officer Glenn Ball spoke to Ms. Baron at the scene. Over defense counsel's objection, he testified that she told him Mr. May was a drug dealer.

Mr. May also testified at trial. He stated the drugs and syringes belonged to Ms. Baron, and that she was the only person involved in the drug sales to Ms. Bohling. He said the gun found at the scene belonged to his mother, who must have forgotten it when she visited him the night before the search.

Mr. May proposed the following jury instruction:

> A person is not guilty of unlawful possession of a firearm if the possession is unwitting. Possession of a firearm is unwitting if a person did not know that the firearm was in his possession.

> The burden is on the defendant to prove by a preponderance of the evidence that the firearm was possessed unwittingly. Preponderance of the evidence means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true.

The trial court rejected the proposed instruction on the ground that the defense of unwitting possession is available only to a charge of possession of a controlled substance. In closing, defense counsel argued, "[T]he . . . State . . . [has] failed to overcome [Mr. May's] explanation of where the gun came from. It's an interesting question with respect to his possession if it's unwitting. . . . I hope you find he possessed it unwittingly[.]"

The jury returned guilty verdicts, convicting Mr. May of all charges.

First, did the superior court err when it refused to give Mr. May's proposed instruction regarding unwitting possession of a firearm? The court reasoned that unwitting possession is a defense only to possession of a controlled substance.

██ "Although criminal offenses with no mens rea requirement are generally disfavored, the Legislature may dispense with the requirement." *State v. Semakula*, 88 Wn. App. 719, 724, 946 P.2d 795 (1997). The court in *Semakula* held that "[k]nowledge that possession is unlawful is not an element of the crime of unlawful possession of a firearm . . . ." *Id.* In other words, the State did not have to prove that Mr. May knew it was against the law for a convicted felon such as himself to possess a gun. But, ignorance of the facts is different than ignorance of the law. If the convicted felon can show that he was not aware of the presence of the firearm, then he has a valid defense to the charge. *Id.* at 726-27.

██ ██ Here, Mr. May testified the gun belonged to his mother, she visited him the previous night, and she had the gun with her at that time. He presumed that she left it at his house by mistake, and that Ms. Baron had picked it up sometime later and placed it in the bag by his desk. This testimony was sufficient to support an instruction on unwitting possession. In general, the court must instruct on the party's theory of the case, if the law and the evidence support it, and its failure to do so is reversible error. *State v. Birdwell*, 6 Wn. App. 284, 297, 492 P.2d 249 (1972). In evaluating whether the evidence is sufficient to support a jury instruction on an affirmative defense, the court must interpret it most strongly in favor of the defendant and must not weigh the proof or judge the witnesses' credibility, which are exclusive functions of the jury. *State v. Williams*, 93 Wn. App. 340, 348, 968 P.2d 26 (1998), *review denied*, 138 Wn.2d 1002 (1999).

In *Birdwell*, the court considered the defendant's argument that the trial court erred in refusing to instruct on unwitting possession as a defense to a charge of possession of a controlled substance with intent to sell. The court held that the lack of an instruction on unwitting possession did not prejudice the defendant. *Birdwell*, 6 Wn. App. at 297-98. It reasoned that the State would fail in its proof if it did not show that the defendant possessed the drug with the intent to sell it. In other words, if the defendant was un-

aware of the drug's presence he could not form the intent to sell. But, the court specifically stated that "a different case might be presented if the charge were mere possession of a dangerous drug[.]" *Id.* at 298.

Here, the charge is mere possession. The court's instructions on the offense of unlawful possession of a firearm advised the jury that the State had to prove Mr. May had a firearm in his possession or control and that he had been previously convicted of a serious offense. The court further instructed that possession may be actual or constructive and that constructive possession "occurs when there is no actual physical possession but there is dominion and control over the item." These instructions permitted the jury to convict Mr. May even if it believed he was unaware of the gun's presence in the residence after his mother left. The jury could find that he had dominion and control over the items in the house, or at least those in the areas of the house he used, such as the office. In these circumstances, the court's refusal to give an unwitting possession instruction was reversible error.

Affirmed in part and reversed in part.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

BROWN, A.C.J., and SWEENEY, J., concur.

Review denied at 142 Wn.2d 1004 (2000).