116 P.3d 441 (2005)
STATE of Washington, Respondent,
v.
Steven Matthew MULLINS, Appellant.
No. 32133-5-II.
Court of Appeals of Washington, Division 2.
July 26, 2005.
*442 J. Andrew Toynbee, Chehalis, WA, for Respondent.
Kevin John Yamamoto, Chehalis, WA, for Appellant.
BRIDGEWATER, J.
¶ 1 Steven Matthew Mullins appeals his jury conviction of possession of a controlled substancemarijuana over 40 grams, arguing that the trial court erred in refusing to permit him to present evidence that he was the designated primary caregiver of a medical marijuana patient under chapter 69.51A RCW, the Washington State Medical Use of Marijuana Act. We hold that the Act requires that a defendant asserting an affirmative defense under RCW 69.51A.040(1) presently be a primary caregiver; here, Mullins's duties were to take place in the future when the patient's eyesight failed. Additionally, Mullins was responsible for only one aspect of the patient's care, obtaining marijuana. The patient physically cared for himself, even to the preparation and administration of the marijuana by cooking it into edible cookies and brownies. Mullins was not a primary *443 caregiver; the court did not err in refusing to permit him to argue this theory to the jury. We affirm.

FACTS
¶ 2 On September 26, 2003, Sergeant Kurt Reichert and Officer Tracy Murphy of the Centralia Police Department performed a traffic stop on Mullins. Upon contacting Mullins, the officers smelled a strong odor of unburned marijuana. Officer Murphy testified that he questioned Mullins regarding the odor, and Mullins responded that he and his passenger had "been around someone smoking marijuana." 1 Report of Proceedings (RP) (July 6, 2004) at 36.
¶ 3 Officer Murphy then searched Mullins's truck and discovered six baggies of marijuana. Additionally, Sergeant Reichert found printed information about the State Medical Use of Marijuana Act (Act).[1] When questioned about the marijuana, Mullins stated that he was "holding" it for a friend who had gone to a concert and was concerned that someone might "break in his house" and steal the drugs. 1 RP at 39. Mullins was also en route to a concert. Mullins further stated that he did not smoke marijuana frequently but that he had smoked it two weeks prior to the stop. Mullins did not tell the officers he was carrying the marijuana for a medical patient under the Act.
¶ 4 The State charged Mullins with possession of a controlled substancemarijuana over 40 grams, and the matter was tried before a jury on July 6, 2004. At the close of its case, the State moved in limine to prevent Mullins from presenting evidence that he could lawfully possess marijuana as the designated primary caregiver for a medical marijuana patient, an affirmative defense under the Act.[2]
¶ 5 In an offer of proof, Mullins's presented testimony by his uncle, Jeffrey Bauman. Bauman testified that he suffers from glaucoma and was authorized by a physician to use medical marijuana to treat this disease. He further testified that he prepared the marijuana by baking it into cookies and brownies.
¶ 6 Bauman further testified that on September 24, 2003, two days prior to Mullins's arrest, he designated Mullins as his caregiver to supply marijuana. Mullins offered into evidence Bauman's handwritten notation on the bottom of his medical marijuana referral. The handwritten, signed notation reads:
WED, 24, SEPT, 2003 MATHEW [sic] MULLINS IS ACTING AS CAREGIVER FOR ME (JEFF) BAUMAN) IN SECURING MARIJUANA FOR MY PERSONAL USE.
Ex. 1.
¶ 7 Bauman stated that at the time he designated Mullins as his caregiver, he was living with his now ex-wife, but "if [his] sight failed or [he] went blind," he knew that Mullins would assist him with physical activities and driving. 1 RP at 76-77. Additionally, Bauman and Mullins had discussed the possibility of Mullins using the spare room at Bauman's home and learning Bauman's trade as a tile setter. Bauman testified that it was his intent that Mullins ultimately would physically assist him.
¶ 8 The court granted the State's motion, finding that Bauman designated Mullins as his caregiver solely to secure marijuana and that primary caregiver status contemplated something more than merely supplying marijuana. The court stated that it was required to strictly interpret RCW 69.51A.040, the affirmative defense statute, because the statute is contrary to the criminal code. The court refused to permit Mullins to present evidence and to instruct the jury on the affirmative defense.
¶ 9 Mullins was found guilty as charged. He appeals on the grounds that the trial court erred in prohibiting him from presenting a medical marijuana defense.

ANALYSIS

I. Burden of Proof
¶ 10 The Medical Use of Marijuana Act (Act) provides an affirmative defense for patients *444 and caregivers charged with possessing marijuana. RCW 69.51A.005; State v. Phelps, 118 Wash.App. 740, 743, 77 P.3d 678 (2003). Under the Act, persons who act as primary caregivers to qualifying patients shall not be found guilty of a crime for assisting with the medical use of marijuana. RCW 69.51A.005.
¶ 11 Under RCW 69.51A.040(1):
If charged with a violation of state law relating to marijuana, any qualifying patient who is engaged in the medical use of marijuana, or any designated primary caregiver who assists a qualifying patient in the medical use of marijuana, will be deemed to have established an affirmative defense to such charges by proof of his or her compliance with the requirements providing in this chapter.
¶ 12 In order to affirmatively defend a criminal prosecution for possessing marijuana, a defendant must show by a preponderance of evidence that he or she has met the requirements of the Act. Phelps, 118 Wash.App. at 744, 77 P.3d 678. But here we are not asked to decide whether Mullins proved a medical use defense by a preponderance of the evidence. Rather, we are asked to decide whether he presented sufficient evidence to allow the jury to consider the defense.
¶ 13 In general, a trial court must instruct on a party's theory of the case if the law and the evidence support it and failure to do so is reversible error. State v. May, 100 Wash.App. 478, 482, 997 P.2d 956, review denied, 142 Wash.2d 1004, 11 P.3d 825 (2000). A criminal defendant has the right to present a defense but may not do so by introducing irrelevant or inadmissible evidence. State v. Thomas, 123 Wash.App. 771, 778, 98 P.3d 1258 (2004). A defendant raising an affirmative defense must offer sufficient admissible evidence to justify giving the jury an instruction on the defense. State v. Janes, 121 Wash.2d 220, 237-38, 850 P.2d 495 (1993); May, 100 Wash.App. at 482, 997 P.2d 956. In evaluating whether the evidence is sufficient to support such an instruction, the trial court must interpret the evidence most strongly in favor of the defendant. May, 100 Wash.App. at 482, 997 P.2d 956. The jury, not the judge, must weigh the proof and judge the witnesses' credibility, which are the exclusive functions of the jury. May, 100 Wash.App. at 482, 997 P.2d 956.

II. "Primary Caregiver"
¶ 14 Mullins contends that the trial court erred in granting the State's motion in limine and precluding him from presenting a "primary caregiver" affirmative defense to the jury. Br. of Appellant at 12.
¶ 15 Under RCW 69.51A.010(2), a "[p]rimary caregiver" must be: (1) 18 years of age or older; (2) responsible for the housing, health, or care of the patient; and (3) designated in writing by the patient to perform the duties of primary caregiver. And to qualify for the affirmative defense, a "primary caregiver" must: (1) meet all criteria for status as a primary caregiver; (2) possess no more marijuana than necessary for the patient's personal, medical use, not exceeding the amount necessary for a 60-day supply; (3) present a copy of the qualifying patient's valid documentation, as well as evidence of designation to act as primary caregiver, to any law enforcement official requesting such information; (4) be prohibited from consuming marijuana obtained for the personal, medical use of the patient; and (5) be the primary caregiver to only one patient at any one time. RCW 69.51A.040(4).
¶ 16 Here, because the trial court determined that Mullins failed to meet the statutory definition of "primary caregiver," it did not analyze whether he qualified for the defense under RCW 69.51A.040(4). Thus, the sole question before this court is whether Mullins was a primary caregiver under RCW 69.51A.010(2). To the extent that the court interpreted that statute, our review is de novo. State v. Shepherd, 110 Wash.App. at 544, 550, 41 P.3d 1235, review denied, 147 Wash.2d 1017, 56 P.3d 992 (2002).
¶ 17 Mullins first contends that the court erred in finding that Bauman had designated him as his caregiver solely to secure marijuana. Mullins argues that, although Bauman testified that his intent was for Mullins to physically assist him if his sight failed, Mullins nevertheless was responsible for such *445 duties. He asserts: "[t]o be responsible does not require that the responsible person presently fulfill a duty when the duty is contingent on circumstances which may [sic] yet to occur." Br. of Appellant at 13 (emphasis added). Mullins is in error.
¶ 18 RCW 69.51A.010(2)(b) requires a primary caregiver to be a person who "[i]s responsible for the housing, health, or care of the patient." The use of the term "is" clearly indicates that the person must be presently responsible for those duties. Further, the statute plainly does not provide that a primary caregiver is a person who may or will be responsible for the housing, health, or care of a patient, should a particular contingency occur. While Mullins may have been responsible to Bauman to physically care for him if his eyesight failed, Mullins was not presently responsible for Bauman's care under the statute.
¶ 19 Moreover, Bauman's handwritten designation stated that Mullins would "ACT[] AS CAREGIVER FOR [Bauman] IN SECURING MARIJUANA FOR [his] PERSONAL USE." Ex. 1 (emphasis added). It did not state that Mullins was to care for Bauman. And Bauman's testimony that it was his intent for Mullins to physically assist him if his eyesight failed was insufficient to establish such a designation. Under RCW 69.51A.010(2)(c), a primary caregiver must have been "designated in writing" by the patient. (Emphasis added). Thus, Mullins failed to present sufficient evidence that he was designated to care for Bauman, and the trial court did not err in so finding.
¶ 20 Mullins next asserts that the trial court erred in strictly construing the Act and determining that primary caregiver status required more than merely supplying marijuana. He argues that the statute requires a primary caregiver to be responsible for a patient's housing, health, or care and that, in providing medical marijuana to Bauman, who requires the drug to treat a debilitating medical condition, he is responsible for Bauman's health or care. The State responds that Mullins was responsible for only an aspect of Bauman's health or care; and a determination that this was sufficient to meet RCW 69.51A.010's requirements would "ignore[] the terms `primary' and `responsible,' both of which denote something more than merely assisting in the procurement of marijuana." Br. of Resp't at 10. Whether an individual who is solely responsible for supplying marijuana to a qualifying patient is a "[p]rimary caregiver" under RCW 69.51A.010 is an issue of first impression before this court.
¶ 21 When engaging in statutory construction, our primary objective is to ascertain and give effect to the intent and purpose of the legislature in creating the statute. Am. Cont'l Ins. Co. v. Steen, 151 Wash.2d 512, 518, 91 P.3d 864 (2004). First, we must attempt to derive legislative intent from the statute itself, and if the statute is clear on its face, its meaning must be ascertained from that language. Am. Cont'l, 151 Wash.2d at 518, 91 P.3d 864. In the absence of a statutory definition of a term, we give the term its plain and ordinary meaning ascertained from a standard dictionary. Am. Cont'l, 151 Wash.2d at 518, 91 P.3d 864.
¶ 22 A statute is ambiguous if it can be reasonably interpreted in more than one way. Am. Cont'l, 151 Wash.2d at 518, 91 P.3d 864. However, it is not ambiguous simply because different interpretations are conceivable. Am. Cont'l, 151 Wash.2d at 518, 91 P.3d 864. We are not to search for "`an ambiguity by imagining a variety of alternative interpretations.'" Am. Cont'l, 151 Wash.2d at 518, 91 P.3d 864 (quoting W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wash.2d 599, 608, 998 P.2d 884 (2000)). If a statute is ambiguous, we resort to principles of statutory construction, legislative history, and relevant case law to assist in interpreting it. Am. Cont'l, 151 Wash.2d at 518, 91 P.3d 864.
¶ 23 In construing a criminal statute, the rule of lenity applies where two possible constructions are permissible. Phelps, 118 Wash.App. at 744, 77 P.3d 678. This rule requires us to construe the statute strictly against the State and in favor of the accused. Phelps, 118 Wash.App. at 744, 77 P.3d 678. But we do not consider the rule of lenity when the statute is clear on its face. Phelps, 118 Wash.App. at 744, 77 P.3d 678.
¶ 24 The terms "primary" and "responsible" are not defined in chapter 69.51A RCW; thus, we ascertain their meaning from a standard dictionary. Am. Cont'l, 151 Wash.2d at *446 518, 91 P.3d 864. The term "primary" means "first in rank or importance: CHIEF, PRINCIPAL" or ": BASIC FUNDAMENTAL." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1800 (1969). And "responsible" means "involving responsibility: involving a degree of accountability." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1935 (1969).
¶ 25 These definitions are dispositive as the State suggests. A person could be a "primary" caregiver if he or she is the chief or principal individual caring for the patient or if he or she, as a caregiver, merely provides a basic or fundamental service to the patient. Here, while Mullins admittedly was not chiefly responsible for Bauman's health or care, he arguably was providing a basic service in so far as he supplied Bauman with the drugs necessary to treat his medical condition.
¶ 26 But the further requirement that a primary caregiver be "responsible" for the patient's housing, health, or care cures the ambiguity. That the caregiver must be accountable for one of these duties demonstrates that the first definition of "primary" was intended; it is axiomatic that the individual held accountable for the housing, health, or care of a patient is necessarily the chief or principal person fulfilling one of these duties. Thus, RCW 69.51A.010(2) is not ambiguous as to what duties a primary caregiver must fulfill: a "primary caregiver" is the individual chiefly or principally responsible for providing housing, health, or care to a qualifying patient. And here, Mullins was responsible for only one aspect of Bauman's health or carehis medication. At the time Bauman designated Mullins his caregiver to supply him with medical marijuana, Bauman physically cared for himself and even administered his own medication by cooking the marijuana into cookies or brownies. Accordingly, the trial court did not err in refusing to permit Mullins to argue this theory to the jury.
¶ 27 Affirmed.
We concur: HOUGHTON, PJ. and VAN DEREN, J.
NOTES
[1] Chapter 69.51A RCW.
[2] RCW 69.51A.040.