[No. 31386-3-II. Division Two. August 9, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. MONICA LORRAINE
GINN, *Appellant*.

 

*Suzanne L. Elliott*, for appellant.

*Edward G. Holm, Prosecuting Attorney*, and *Steven C. Sherman, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — A jury convicted Monica L. Ginn of manufacturing marijuana (with a school bus stop enhancement) and unlawful possession of marijuana with intent to deliver. Ginn appeals, claiming that the trial court erred in granting the State's motion in limine precluding her from raising the affirmative defenses of medical use of marijuana as a "qualifying patient" and as a "primary caregiver" under chapter 69.51A RCW, the Washington State Medical Use of Marijuana Act (the Act). The State cross-appeals the trial court's exceptional sentence downward of 12 months plus one day on the underlying offenses.

¶2 Ginn did not present sufficient evidence that she acted as a primary caregiver and was not entitled to such defense. But she did present sufficient evidence to submit whether she was herself a "qualifying patient" to the jury. Thus, the trial court's order excluding evidence of an affirmative defense of "qualifying patient" under the Act was error. Because we reverse Ginn's convictions and remand for a new trial, we do not address the State's sentencing issues, which are now moot.

## FACTS

¶3 On April 28, 2002, landscaper Ginn contacted Detective Rodney Ditrich of the Thurston County Narcotics Task Force and asked him to inspect her medical marijuana grow operation in Olympia, Thurston County, to make sure it was legal. Ginn had heard that law enforcement in King County was inspecting marijuana grows and she wanted local authorities to do the same.

¶4 Detective Ditrich was initially unsure what to do. On April 30, he went to Ginn's residence at her request. After Detective Ditrich explained to Ginn her right to refuse consent, Ginn gave Detective Ditrich permission to search the property. Ginn showed Detective Ditrich 21 marijuana plants growing in a room inside a single-wide trailer.[1] Ginn told Detective Ditrich that there were another 5 to 10 germinating marijuana seeds inside what Detective Ditrich described as a makeshift germination chamber. Ginn also showed Detective Ditrich an outbuilding containing other grow equipment.

¶5 On May 14, 2002, Detective Ditrich returned to Ginn's property with a search warrant. Police officers confiscated 23 plants (two seedlings had apparently been transferred out of the germination chamber) and other grow-related items at that time.

¶6 When Detective Ditrich interviewed Ginn at the Thurston County jail after serving the warrant, she informed him that she had planned to consume some of the marijuana; to give some to a terminally-ill individual named Otterson; and to sell the rest to an organization known as the "Green Cross" for between $150 and $250. (At trial, Ginn testified that she had actually planned to *donate* the marijuana to the organization, which operated a clinic providing marijuana to terminally-ill individuals, but that

---

[1] Detective Ditrich testified that the single-wide trailer was located about 75 to 80 feet from what served as Ginn's residence, a Toyota motor home also located on the property.

the organization might reimburse her for expenses such as her power bill.)

¶7 The State charged Ginn by first amended information with unlawful manufacture of a controlled substance (Count I) and unlawful possession of a controlled substance with intent to deliver (Count II).[2] Count I also alleged that the manufacturing occurred within 1,000 feet of a school bus stop; an affirmative finding by the jury would result in a mandatory 24-month sentence enhancement.[3]

¶8 Before Ginn's jury trial, the State moved in limine to preclude Ginn from asserting an affirmative defense under the Washington State Medical Use of Marijuana Act. Ginn submitted (1) documents from her doctor stating that Ginn was a qualifying patient under the Act and (2) a notarized letter stating that Ginn was a "primary caregiver" for Robert Otterson,[4] whom Ginn asserted was another qualifying patient suffering from multiple sclerosis and paralysis.

¶9 The trial court held an evidentiary hearing on the State's motion in limine on January 12, 2004. Dr. John Walck, Ginn's treating physician; Martin Martinez, the director of the Lifeline Foundation, a nonprofit foundation assisting medical marijuana patients; and Dr. Gregory Carter, a medical doctor and medical marijuana researcher, testified at the hearing. Dr. Walck testified that Ginn suffered from chronic back pain and symptoms of spasticity and that her use of marijuana for treatment was successful and appropriate. Both Martinez and Dr. Carter testified about which portions of the marijuana plant were suitable for medical use and the appropriate or typical dosages for patients.

¶10 The court granted the State's motion in limine and entered corresponding findings of fact and conclusions of law.

---

[2] Both are violations of former RCW 69.50.401a (1998).

[3] Former RCW 69.50.435(a) (1997); former RCW 9.94A.510(6) (2000).

[4] Otterson apparently died before trial and did not testify on Ginn's behalf.

¶11 A jury trial commenced on January 13, 2004. The State presented evidence of a marijuana grow operation (including its finished products, the plants) and evidence that the operation was located 734 feet from a school bus stop. The jury found Ginn guilty on both counts and entered a special verdict on the sentence enhancement on Count I finding that Ginn had manufactured a controlled substance within 1,000 feet of a school bus route stop.

¶12 Following a January 30, 2004 sentencing hearing, the court sentenced Ginn to an exceptional sentence downward of 12 months plus one day on each of the underlying offenses, to run concurrently, plus the mandatory 24-month school bus stop enhancement, for a total of 36 months plus one day confinement.[5]

¶13 Ginn appeals her conviction on the ground that the trial court erred in prohibiting her from presenting a medical marijuana defense. Correspondingly, she assigns error to nearly all the trial court's findings of fact and conclusions of law entered in respect to the court's order in limine. The State cross-appeals Ginn's exceptional sentence downward.

## ANALYSIS

INTRODUCTION AND BURDEN OF PROOF

¶14 In 1998, the citizens of Washington enacted Initiative 692, the Washington State Medical Use of Marijuana Act. The Act is codified in chapter 69.51A RCW. The purpose of the Act is to allow patients with terminal or debilitating illnesses to use marijuana when authorized by their treating

---

[5] Ginn was sentenced on identical marijuana-related charges by the same judge in April 2002. She therefore had an offender score of "9" on both counts. See former RCW 9.94A.525(12) (2001) ("If the present conviction is for a drug offense count three points for each adult prior felony drug offense conviction"); former RCW 9-.94A.589(1)(a) (2000) ("whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score"). Ginn's standard range on both charges was 51 to 68 months; thus, with the mandatory sentence enhancement of 24 months on Count I, her standard range was 75 to 92 months on that charge. See former RCW 9.94A.510.

physician. RCW 69.51A.005. The Act also protects certain people who supply marijuana to such persons: "Persons who act as *primary caregivers* to such patients shall also not be found guilty of a crime under state law for assisting with the medical use of marijuana." RCW 69.51A.005 (emphasis added).

¶15 Under RCW 69.51A.040(1):

> If charged with a violation of state law relating to marijuana, any qualifying patient who is engaged in the medical use of marijuana, or any designated primary caregiver who assists a qualifying patient in the medical use of marijuana, will be deemed to have established an affirmative defense to such charges by proof of his or her compliance with the requirements provided in this chapter.

¶16 In order to affirmatively defend a criminal prosecution for possessing or manufacturing marijuana, a defendant must show by a preponderance of evidence that he has met the requirements of the Act. *State v. Shepherd*, 110 Wn. App. 544, 550, 41 P.3d 1235, *review denied*, 147 Wn.2d 1017 (2002); *see also State v. Riker*, 123 Wn.2d 351, 368, 869 P.2d 43 (1994) (an affirmative defense that does not negate an element of the crime, but excuses the conduct, must be proved by a preponderance of the evidence). Preponderance of the evidence means that considering all the evidence, the proposition asserted must be more probably true than not true. *Shepherd*, 110 Wn. App. at 550 (citing *United States v. Lemon*, 824 F.2d 763 (9th Cir. 1987); 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 52.01 (2d ed. 1994)).

¶17 Here, we are not asked to decide whether Ginn proved a medical use defense by a preponderance of the evidence. Instead we are asked to decide whether Ginn presented sufficient evidence to allow the jury to consider her defense.

¶18 In general, a trial court must instruct on a party's theory of the case if the law and the evidence support it; the failure to do so is reversible error. *State v. May*, 100 Wn. App. 478, 482, 997 P.2d 956 (citing *State v.*

*Birdwell,* 6 Wn. App. 284, 297, 492 P.2d 249 (1972)), *review denied,* 142 Wn.2d 1004 (2000). Defendants have the right to present a defense, but they may not do so by introducing evidence that is irrelevant or otherwise inadmissible. *State v. Thomas,* 123 Wn. App. 771, 778, 98 P.3d 1258 (2004) (citing *State v. Rehak,* 67 Wn. App. 157, 162, 834 P.2d 651 (1992)). A defendant raising an affirmative defense must offer sufficient admissible evidence to justify giving the jury an instruction on the defense. *E.g., State v. Janes,* 121 Wn.2d 220, 236-37, 850 P.2d 495 (1993). And in evaluating whether the evidence is sufficient to support such a jury instruction, the trial court must interpret the evidence most strongly in favor of the defendant. The jury, not the judge, must weigh the proof and evaluate the witnesses' credibility. *May,* 100 Wn. App. at 482 (citing *State v. Williams,* 93 Wn. App. 340, 348, 968 P.2d 26 (1998), *review denied,* 138 Wn.2d 1002 (1999)).[6] Applying this analysis to the record here, we determine that the trial court erred in failing to permit Ginn to present medical use defense to the jury.

QUALIFYING PATIENT

¶19 Ginn contends that the trial court erred in granting the State's motion in limine and precluding her from presenting her "qualifying patient" affirmative defense to the jury. We agree.

¶20 RCW 69.51A.040(1) states "any *qualifying patient* who is engaged in the medical use of marijuana ... will be deemed to have established an affirmative defense to ... charges [of violating state law relating to marijuana] by proof of his or her compliance with the requirements provided in this chapter." (Emphasis added.) Under RCW 69.51A.010(3), a "qualifying patient" means a person who:

---

[6] As the State pointed out in its brief and at oral argument, this court has held that a "defendant is required to show by a preponderance of the evidence that he or she has met the requirements of the Act in order to raise an affirmative defense against criminal prosecution." *State v. Phelps,* 118 Wn. App. 740, 744, 77 P.3d 678 (2003) (citing *Shepherd,* 110 Wn. App. at 550). But the passage cited from *Shepherd* does not discuss the quantum of evidence to *raise* the defense before a jury, only the defendant's burden before the trier of fact.

(a) Is a patient of a [licensed] physician . . . ;

(b) Has been diagnosed by that physician as having a terminal or debilitating medical condition;

(c) Is a resident of the state of Washington at the time of such diagnosis;

(d) Has been advised by that physician about the risks and benefits of the medical use of marijuana; and

(e) Has been advised by that physician that they may benefit from the medical use of marijuana.

Under RCW 69.51A.010(4), "terminal or debilitating medical condition" means:

(a) Cancer, human immunodeficiency virus (HIV), multiple sclerosis, epilepsy or other seizure disorder, or spasticity disorders; or

(b) *Intractable pain, limited for the purpose of this chapter to mean pain unrelieved by standard medical treatments and medications*; or

(c) Glaucoma, either acute or chronic, limited for the purpose of this chapter to mean increased intraocular pressure unrelieved by standard treatments and medications; or

(d) Any other medical condition duly approved by the Washington state medical quality assurance board [commission] as directed in this chapter.

(Emphasis added.) (Alteration in original.) A qualifying patient, if 18 years of age or older, must "[p]ossess no more marijuana than is necessary for the patient's personal, medical use, not exceeding the amount necessary for a sixty-day supply." RCW 69.51A.040(2)(b). He or she must also "[p]resent . . . valid documentation to any law enforcement official who questions the patient regarding his or her medical use of marijuana." RCW 69.51A.040(2)(c).[7] Finally, "valid documentation" means:

---

[7] In *State v. Butler*, 126 Wn. App. 741, 750-51, 109 P.3d 493 (2005), we held that "[i]n order to render [defendant's] marijuana possession legal under the Act, [defendant] needed to obtain and to possess . . . documentation from his personal physician *in advance* of law enforcement's questioning his medical use and possession." Here, although neither party discussed the matter in its briefing and

(a) A statement signed by a qualifying patient's physician, or a copy of the qualifying patient's pertinent medical records, which states that, in the physician's professional opinion, the potential benefits of the medical use of marijuana would likely outweigh the health risks for a particular qualifying patient; and

(b) Proof of identity such as a Washington state driver's license or identicard, as defined in RCW 46.20.035.

RCW 69.51A.010(5).

¶21 Here, Ginn presented some evidence that she met each of the statutory criteria of the "qualifying patient" defense.

¶22 The State disputes only two criteria: First, whether Ginn's condition of "intractable pain" met the statutory requirement of being "unrelieved by standard medical treatments and medications" and, second, whether Dr. Walck had discussed with Ginn the "risks and benefits" of medical marijuana use.[8] RCW 69.51A.010(3)(d), (4)(b).

¶23 Ginn's asserted qualifying condition was chronic back pain. Under the statute, "intractable pain" is "limited for the purpose of this chapter to mean *pain unrelieved by standard medical treatments and medications.*" RCW 69.51A.010(4)(b) (emphasis added). Ginn's doctor stated on cross-examination:

---

it did not come up during the motion hearing (which, we note, took place well before we issued *Butler*), the record suggests that Ginn can meet this requirement. First, at the hearing on the State's motion in limine, Ginn introduced a March 26, 2002 letter from Dr. Walck, her doctor, and an April 17, 2002 "Medical Marijuana Release Form" signed by him. Ginn did not contact Detective Ditrich until April 28, 2002. Second, although at trial Detective Ditrich was prevented by the State's objection from testifying in depth on the matter, he did indicate that Ginn offered him documentation at the time of his initial visit. *Compare Butler*, 126 Wn. App. 747-51 (defendant asserted common law "medical necessity" defense and offered no documentation under the Act).

[8] As to the amount of marijuana Ginn possessed, the court concluded that Ginn presented sufficient evidence to satisfy the "not exceeding the amount necessary for a sixty day supply" element of the medical marijuana defense. Clerk's Papers at 94. Substantial evidence supports this conclusion based on the testimony by Martinez and Dr. Carter.

Q. Okay. And there's [sic] three subsections. One of them says "intractable pain."

A. Intractable.

Q. . . . "[L]imited for the purpose of this chapter to mean pain unrelieved by standard medical treatments and medications." Would she fit with that one?

A. She came to me having been on marijuana successfully, successfully treating her condition. *I don't recall specifically whether we discussed whether she had been on other things and had failed them,* but in my opinion the medical marijuana was an appropriate therapy at that time.

1 Report of Proceedings (RP) (Jan. 12, 2004) at 73-74.

¶24 But Dr. Walck later stated:

> *I had received information from [Ginn] that other things had been tried, medications, physical therapy, I believe chiropractic, and that none of those things had worked.* And then rather than submit to continuing other medications with dealing with pain, since the marijuana was effective, then I felt that was the best treatment, especially since she was able to maintain her functionality in life.

1 RP (Jan. 12, 2004) at 83.

¶25 In evaluating whether the evidence is sufficient to require a jury instruction on an affirmative defense, the trial court must view the evidence in favor of the defendant. *See May,* 100 Wn. App. at 482. Dr. Walck's testimony, taken in the light most favorable to Ginn, provided sufficient evidence for a jury to reasonably believe that Ginn was suffering from intractable pain "unrelieved by standard medical treatments." RCW 69.51A.010(4)(b).

¶26 Next, the State asserts that there was no evidence that Dr. Walck had satisfied the statutory requirement that he discuss with Ginn "the risks and benefits of the medical use of marijuana." Br. of Resp't/Cross-Appellant at 6 (citing RCW 69.51A.010(3)(d)). But Ginn's response to the State's motion in limine contains Dr. Walck's "Medical Marijuana Release Form" stating, "I have advised [Ginn] about potential risks and benefits of the medical use of marijuana." Clerk's Papers (CP) at 20.

¶27 Again, taken in the light most favorable to Ginn, there was evidence before the trial court from which a jury could have concluded that Ginn had been advised of the potential "risks and benefits of the medical use of marijuana." RCW 69.51A.010(3)(d).

¶28 Our review of the record establishes that Ginn presented evidence of each element of the "qualifying patient" defense under the Act. Thus, the jury should have been instructed on the burden and elements of that affirmative defense.

PRIMARY CAREGIVER

¶29 Ginn also contends that the trial court erred in granting the State's motion in limine and precluding her from presenting her "primary caregiver" affirmative defense to the jury. But the trial court did not err in refusing to allow Ginn to assert this defense or instructing the jury on its elements.

¶30 Chapter 69.51A RCW provides an affirmative defense for caregivers against Washington laws relating to marijuana. A "primary caregiver" must be 18 or older; be "responsible for the housing, health, or care of the patient;" and be "designated in writing by a patient to perform the duties of primary caregiver" under the chapter. RCW 69-.51A.010(2). Moreover, in order to establish the affirmative defense, the primary caregiver must:

(a) Meet all criteria for status as a primary caregiver to a qualifying patient;

(b) Possess, in combination with and as an agent for the qualifying patient, no more marijuana than is necessary for the patient's personal, medical use, not exceeding the amount necessary for a sixty-day supply;

(c) Present a copy of the qualifying patient's *valid documentation* required by this chapter, as well as evidence of designation to act as primary caregiver by the patient, to any law enforcement official requesting such information;

(d) Be prohibited from consuming marijuana obtained for the personal, medical use of the patient for whom the individual is acting as primary caregiver; and

(e) Be the primary caregiver to only one patient at any one time.

RCW 69.51A.040(4) (emphasis added). "Valid documentation" includes "[a] statement signed by a qualifying patient's physician, or a copy of the qualifying patient's pertinent medical records, which states that, in the physician's professional opinion, the potential benefits of the medical use of marijuana would likely outweigh the health risks for a particular qualifying patient." RCW 69.51A-.010(5)(a).

¶31 Ginn did not present "valid documentation" establishing that Otterson was a qualifying patient. In her response to the State's motion in limine, Ginn submitted a handwritten notarized letter from Otterson designating "Monica Ginn as my primary caregiver in compliance with RCW 69.51A.010[(2)] and [RCW] 69.51A.040[(4)]." CP at 29. The letter stated that Ginn "shall be responsible for providing the necessary amount [of marijuana] to ease my pain and alleviate my symptoms." CP at 29. The letter also stated, "I am a qualifying patient registered with Green Cross Patient Co-op and under the supervision of Dr. Amos Shirman." CP at 29. But Ginn did not provide "valid documentation" under RCW 69.51A.010(5) that Otterson was a qualifying patient.

¶32 To establish the affirmative defense, Ginn must meet the criteria under RCW 69.51A.040(4); this includes presentation of a qualifying patient's "valid documentation." This she failed to do.[9] Thus, the trial court correctly

---

[9] The trial court observed that Ginn could not be considered a "primary caregiver" based solely on her providing Otterson with marijuana. For example, its conclusion of law 6 stated, "A person who's [sic] sole provision of service to a 'qualifying patient' is the manufacture and/or delivery of marijuana, does not meet the requirements . . . to be a 'primary caregiver.'" CP at 93; *see State v. Mullins*, 128 Wn. App. 633, 116 P.3d 441 (2005). But in any case we may affirm on any grounds the record supports, including those not explicitly articulated by the trial court. *State v. Norlin*, 134 Wn.2d 570, 582, 951 P.2d 1131 (1998).

ruled that she failed to establish that she was a primary caregiver under the Act and properly excluded evidence relevant to the affirmative defense to which she was not entitled.

EXCEPTIONAL SENTENCE DOWNWARD (CROSS-APPEAL)

¶33 The State cross-appeals, contending that the trial court erred in imposing an exceptional sentence downward[10] because the reasons it supplied do not support its conclusion that the sentence was clearly too lenient. But because we reverse Ginn's conviction, we do not address the State's claim.

¶34 We vacate the judgment and sentence in this case and remand for a new trial.

MORGAN and VAN DEREN, JJ., concur.

Review denied at 157 Wn.2d 1010 (2006).

---

[10] A court must generally impose a sentence within the standard sentence range, but a court may impose a sentence below the standard range for reasons that are "substantial and compelling." *State v. Fowler*, 145 Wn.2d 400, 404, 38 P.3d 335 (2002); *see also* former RCW 9.94A.535 (2001).