# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52309-4-II |
| Respondent, | |
| v. | |
| JEANIA ANDREA WATTS-DYSON, | UNPUBLISHED OPINION |
| Appellant | |

LEE, C.J. — Jeania A. Watts-Dyson[1] appeals her convictions for unlawful possession of heroin while armed with a firearm, unlawful possession of methamphetamine while armed with a firearm, unlawful possession of cocaine, unlawful possession of oxycodone, and two counts of first degree unlawful possession of a firearm.  She contends that the trial court erred when it denied her request to instruct the jury on the defense of unwitting possession and that there is insufficient evidence to support the jury's verdicts because the State failed to prove possession.  We affirm.

## FACTS

Lakewood Police Department Detective Jeff Martin arranged for a controlled buy of narcotics from Marvin Watts, Watts-Dyson's husband.  On the day of the arranged controlled buy, police observed Watts-Dyson, instead of Marvin,[2] emerge from Marvin and Watts-Dyson's home,

---

[1]  Also known as Jeania A. Dyson-Watts.

[2]  We use Marvin's first name for clarity.  We intend no disrespect.

meet the confidential informant, and exchange crack cocaine for money. Based on the controlled buy, Detective Martin obtained a search warrant for Watts-Dyson's home.

Officers executed the search warrant at around 5:20 a.m. Watts-Dyson, Marvin, and Marvin's sister were inside the home when the officers entered. Marvin's sister, who also lived at the home, was in her bedroom. Watts-Dyson and Marvin were asleep on a futon in a room referred to as the "rec room." 1 Verbatim Report of Proceedings (VRP) (June 27, 2018) at 121. Watts-Dyson was dressed in "nighttime clothing." 1 VRP (June 27, 2018) at 155. Marvin told Detective Martin that there were firearms and narcotics in the home. Marvin also said that there were scales in his vehicle and that he shared the master bedroom with Watts-Dyson.

In the rec room, officers found approximately 100 small baggies. At the foot of the futon, officers also found a black pouch. The pouch contained heroin, methamphetamine, a pill bottle containing two rocks of crack cocaine, powder cocaine, and oxycodone. Officers also located a digital scale and crystal methamphetamine on a shelf in the rec room. Officers found a firearm at the head of the futon wrapped in a t-shirt within arm's length of where Watts-Dyson was sleeping.

Also, in the living room, police found another bag of methamphetamine. And in the master bedroom, officers discovered a loaded semiautomatic handgun under the mattress, as well as documents with Watts-Dyson's name on them, pictures of her, and her clothing.

In Marvin's vehicle, officers discovered two more digital scales. The vehicle was parked outside the Watts-Dyson's home.

The State charged Watts-Dyson with one count of unlawful possession of a controlled substance, heroin, with intent to deliver while armed with a firearm; one count of unlawful

possession of a controlled substance, methamphetamine, with intent to deliver while armed with a firearm; one count of unlawful possession of a controlled substance, cocaine; one count of unlawful possession of a controlled substance, oxycodone; and two counts of first degree unlawful possession of a firearm. The State charged Watts-Dyson as an accomplice and identified Marvin as a co-defendant. Watts-Dyson stipulated that she had a prior serious offense making it unlawful for her to possess a firearm.

During trial, Detective Martin testified consistent with the facts outlined above. Watts-Dyson testified that she would "avoid going home" and did not sleep at the home very frequently. 3 VRP (July 10, 2018) at 328. Watts-Dyson further testified that she had seen Marvin with drugs before and she, herself, had taken drugs, but she "[did] not sell drugs, no." 3 VRP (July 10, 2018) at 368. And she testified that she was not aware of any drugs or firearms in the home.

Watts-Dyson requested that the trial court instruct the jury on unwitting possession. The trial court denied her request.

Regarding possession, the trial court instructed the jury:

> Possession means having a substance in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the substance.

> Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.

> In deciding whether the defendant had dominion and control over a substance, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the ability to take actual possession of the substance, whether the defendant had the capacity

3

to exclude others from possession of the substance, and whether the defendant had dominion and control over the premises where the substance was located. No single one of these factors necessarily controls your decision.

Clerk's Papers (CP) at 29.

The jury found Watts-Dyson not guilty of the charges that she possessed a controlled substance with intent to deliver (one count each for heroin and methamphetamine), and instead found her guilty of the lesser included charges of unlawful possession of a controlled substance (heroin) and unlawful possession of a controlled substance (methamphetamine). The jury also found Watts-Dyson guilty of two additional counts of unlawful possession of a controlled substance (based on cocaine, and oxycodone) and two counts of first degree unlawful possession of a firearm. The jury further found that Watts-Dyson was armed with a firearm at the time she unlawfully possessed the heroin and methamphetamine.

Watts-Dyson appeals.

## ANALYSIS

A.   SUFFICIENCY OF EVIDENCE

Watts-Dyson argues that sufficient evidence does not support all her convictions because the State did not prove possession. We disagree.

1.   Standard of Review

Under both the federal and state constitutions, due process requires that the State prove every element of a crime beyond a reasonable doubt. *State v. Hummel*, 196 Wn. App. 329, 352, 383 P.3d 592 (2016) (citing *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d

560 (1979)). Thus, sufficiency of the evidence is a question of constitutional law that we review de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

2.    Legal Principles

To determine whether the State has produced sufficient evidence to support the charged crime, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id*. at 106. Credibility determinations are made by the trier of fact and are not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

Because the State charged Watts-Dyson as an accomplice, it needed to prove that she, with knowledge that she was promoting or facilitating the specific crime charged, aided or agreed to aid Marvin in committing the crime. RCW 9A.08.020(3)(a)(i) & (ii).

Under RCW 69.50.4013(1), to convict Watts-Dyson of unlawful possession of a controlled substance, the State had to prove beyond a reasonable doubt that Marvin possessed a controlled substance.

Under RCW 9.41.040(1)(a), a person is guilty of first degree unlawful possession of a firearm if the person owns or has in his or her possession a firearm, after having previously been convicted of any serious offense. Here, it is undisputed that Watts-Dyson was previously convicted of a serious offense.

Under RCW 9.94A.533(3), a court must add additional time to a sentence if the defendant is found to have been armed with a firearm while committing the crime. *State v. Houston-Sconiers*, 188 Wn.2d 1, 16-17, 391 P.3d 409 (2017).

> To establish that a defendant was armed for the purpose of a firearm enhancement, the State must prove (1) that a firearm was easily accessible and readily available for offensive or defensive purposes during the commission of the crime and (2) that a nexus exists among the defendant, the weapon, and the crime.

*State v. Sassen Van Elsloo*, 191 Wn.2d 798, 826, 425 P.3d 807 (2018). "The defendant does not have to be armed at the moment of arrest to be armed for purposes of the firearms enhancement." *State v. O'Neal*, 159 Wn.2d 500, 504, 150 P.3d 1121 (2007).

      3.      Possession of Controlled Substances and Firearms

Watts-Dyson argues that the State failed to prove she was an accomplice in the possession of controlled substances and firearms to support her convictions for four counts of unlawful possession of a controlled substance (based on heroin, methamphetamine, cocaine, and oxycodone) and two counts of first degree unlawful possession of a firearm. (Br. of Appellant at 17-24)  We disagree.

Possession can be actual or constructive. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002).  Actual possession is where the defendant "has physical custody of the item," whereas constructive possession is where the defendant "has dominion and control over the item." *Id*.  A person's dominion and control over the premises where drugs are found is one of the circumstances from which a jury can infer constructive possession of the drugs. *State v. Shumaker*, 142 Wn. App. 330, 334, 174 P.3d 1214 (2007).  However, "having dominion and control over the premises

containing the item does not, by itself, prove constructive possession." *State v. Davis*, 182 Wn.2d 222, 234, 340 P.3d 820 (2014).

Here, drawing all inferences in the State's favor, we conclude that sufficient evidence exists such that a rational trier of fact could have found beyond a reasonable doubt that Watts-Dyson aided or agreed to aid in the constructive possession of heroin, methamphetamine, cocaine, oxycodone, and two firearms.

In *State v. Reichert*, the State charged the defendant with unlawful possession of marijuana with intent to manufacture or deliver. 158 Wn. App. 374, 378, 242 P.3d 44 (2010). The State presented evidence that the defendant resided in the home where the police found marijuana. *Id.* at 389-90. After a jury convicted him, the defendant appealed, arguing that insufficient evidence supported the finding that he had constructive possession of the marijuana. *Id.* at 390-91. The court disagreed. It stated that residing in the premises where the marijuana was found is one circumstance from which a jury can infer constructive possession. *Id.* at 390. The court recognized that this evidence, alone, was not enough, but noted that additional evidence supported the constructive possession inference, including a strong smell of marijuana from a safe in the defendant's room. *Id.* at 391. Therefore, the court concluded that sufficient evidence supported the conviction. *Id.*

Similar to *Reichert*, evidence established that Watts-Dyson resided at the home where the heroin, methamphetamine, cocaine, oxycodone, and firearms were found. In addition, evidence established that she was involved in a controlled buy that originated from the home. Also, Watts-

Dyson was charged as an accomplice to Marvin and Marvin admitted to officers there were controlled substances and guns in the home.

Viewing the evidence in a light most favorable to the State, the jury could have inferred that Watts-Dyson aided or agreed to aid in the possession of the controlled substances and guns. Therefore, it could have found the element of possession beyond a reasonable doubt. We conclude that sufficient evidence supports Watts-Dyson's convictions for four counts of unlawful possession of a controlled substance (based on heroin, methamphetamine, cocaine, and oxycodone) and two counts of first degree unlawful possession of a firearm.

4.    Firearm Enhancements

Watts-Dyson lastly argues that there is insufficient evidence to support the jury's finding that she was armed with a firearm at the time she unlawfully possessed the heroin and methamphetamine. We disagree.

A firearm enhancement increases the sentence for an underlying felony "if the offender or an accomplice was armed with a firearm" during the course of the crime. RCW 9.94A.533(3). "'A defendant is armed when he or she is within proximity of an easily and readily available deadly weapon for offensive or defensive purposes and when a nexus is established between the defendant, the weapon, and the crime.'" *O'Neal*, 159 Wn.2d at 503-04 (internal quotation marks omitted) (quoting *State v. Schelin*, 147 Wn.2d 562, 575-76, 55 P.3d 632 (2002)). A nexus exists if the defendant and the weapon were "'in close proximity' at the relevant time." *Houston-Sconiers*, 188 Wn.2d at 17 (quoting *State v. Gurske*, 155 Wn.2d 134, 141-42, 118 P.3d 333 (2005)). Sufficient evidence of a nexus is present "[s]o long as the facts and circumstances support an

inference of a connection between the weapon, the crime, and the defendant." *State v. Easterlin*, 159 Wn.2d 203, 210, 149 P.3d 366 (2006). "[T]he State need not establish with mathematical precision the specific time and place that a weapon was readily available and easily accessible, so long as it was at the time of the crime." *O'Neal*, 159 Wn.2d at 504-05.

Here, in the rec room, at the foot of the futon where Watts-Dyson was sleeping, officers found a black pouch. The pouch contained several controlled substances, including heroin and methamphetamine. At the head of the same futon where officers found the heroin and methamphetamine, officers found a firearm wrapped in a t-shirt within arm's length of where Watts-Dyson was sleeping.

Because the firearm was found in close proximity to the heroin and methamphetamine and in close proximity to where Watts-Dyson was sleeping on the futon, a reasonable jury could conclude that the firearm was readily accessible and available to Watts-Dyson during her possession offenses. Accordingly, taking the evidence in the light most favorable to the State, we conclude that there is sufficient evidence to support the firearm sentencing enhancements.

B.      UNWITTING POSSESSION INSTRUCTION

Watts-Dyson contends that the trial court erred when it denied her request to have the jury instructed on the defense of unwitting possession regarding her unlawful possession of a controlled substance offenses. We disagree.

9

1.      Preliminary Matters

Initially, the State argues that this court cannot properly review Watts-Dyson's assignment of error because she did not include her proposed unwitting possession jury instruction in our record. We disagree.

RAP 9.2(b) states, "If the party seeking review intends to urge that the court erred in giving or failing to give an instruction, the party should include in the record all of the instructions given, the relevant instructions proposed, the party's objections to the instructions given, and the court's ruling on the objections." Here, we have an oral record that Watts-Dyson proposed a jury instruction on unwitting possession. She identifies the instruction as "D1." 4 VRP (July 11, 2018) at 424. While we prefer that an appellant include proposed instructions in our record when he or she assigns error to the trial court's refusal to give the proposed instruction, we will still reach the issue if the appellant "has provided this court with the required portions of the report of proceedings." *Wiseman v. Goodyear Tire & Rubber Co.*, 29 Wn. App. 883, 884, 631 P.2d 976 (1981). Because Watts-Dyson has provided this court with the required portions of the report of proceedings, we reject the State's procedural argument.

Next, the State argues that the unwitting possession instruction was proposed only to the possession of a controlled substance offenses and not the possession of a firearm offenses, so it cannot be raised on the firearm offenses for the first time on appeal. We agree.

During Watts-Dyson's oral request for an unwitting possession instruction she stated, "[I]n regard to possession of a controlled substance . . . there were no drugs that were found in [Watts-Dyson's] actual possession, I believe that I have to ask the Court to instruct the jury on unwitting

possession." 4 VRP (July 11, 2018) at 423-24. Watts-Dyson made a passing reference to unwitting possession of the firearms by arguing she did not have actual possession "of any of the drugs that we're talking about and did not have actual possession of either one of the two firearms." 4 VRP (July 11, 2018) at 424. After this single reference to the firearms, she argued exclusively that the defense of unwitting possession goes to whether she possessed the "drugs." 4 VRP (July 11, 2018) at 424. Watts-Dyson went on to ask the court to place her instruction next to the "instruction that indicates that the possession of a controlled substance is a crime." 4 VRP (July 11, 2018) at 424-25. Therefore, we agree with the State that Watts-Dyson's unwitting possession instruction went to the possession of a controlled substance offenses and address the issue accordingly.

2.    Standard of Review

The refusal to give a jury instruction is reviewed for an abuse of discretion. *State v. Harvill*, 169 Wn.2d 254, 259, 234 P.3d 1166 (2010). Discretion is abused if the trial court's decision is manifestly unreasonable or is based on untenable grounds. *State v. McCarthy*, 193 Wn.2d 792, 803, 446 P.3d 167 (2019). A trial court's refusal to instruct the jury on a party's theory of the case when there is supporting evidence is reversible error when it prejudices a party. *State v. Werner*, 170 Wn.2d 333, 337, 241 P.3d 410 (2010).

3.    Legal Principles

Unlawful possession of a controlled substance is a strict liability crime that requires the State to prove the nature of the substance and the fact of possession. *State v. Bradshaw*, 152 Wn.2d

528, 538, 98 P.3d 1190 (2004), *cert. denied*, 544 U.S. 922 (2005). The State does not have to prove knowledge. *Id.*

To ameliorate the harshness of strict liability, the defendant may raise the affirmative defense that possession was unwitting. *State v. Deer*, 175 Wn.2d 725, 735, 287 P.3d 539 (2012), *cert. denied*, 568 U.S. 1148 (2013). To prove unwitting possession, defendants carry the burden of showing by a preponderance of the evidence that they did not know that the substance was in their possession or that they did not know the nature of the substance. *State v. Sandoval,* 8 Wn. App. 2d 267, 281, 438 P.3d 165, *review denied*, 193 Wn.2d 1028 (2019).

In determining whether there is sufficient evidence to support an instruction on the affirmative defense of unwitting possession, the court must interpret the evidence "'most strongly in favor of the defendant and must not weigh the proof or judge the witnesses' credibility.'" *State v. George*, 146 Wn. App. 906, 915, 193 P.3d 693 (2008) (quoting *State v. May*, 100 Wn. App. 478, 482, 997 P.2d 956 (2000)). However, the requested defense must be considered in light of all the evidence presented at trial. *Id.*

A trial court's refusal to give an instruction is not grounds for reversal unless it was prejudicial. *State v. Thomas*, 110 Wn.2d 859, 862, 757 P.2d 512 (1988). The error is not prejudicial unless, "within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." *State v. Barry*, 183 Wn.2d 297, 303, 352 P.3d 161 (2015) (internal quotation marks omitted) (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)). Prejudice is minimized when a party is able to argue his or her theory of the class.

*See State v. Hathaway*, 161 Wn. App. 634, 647, 251 P.3d 253, *review denied*, 172 Wn.2d 1021 (2011).

An accomplice is one who, with knowledge he or she is promoting or facilitating the specific crime charged, either "[s]olicits, commands, encourages, or requests [another] person to commit" the crime; or "[a]ids or agrees to aid [another] person in planning or committing" the crime. RCW 9A.08.020(3)(a)(i), (ii).

4.      No Prejudicial Error

Watts-Dyson argues that because she testified that she did not know controlled substances were in the home and because she claimed her relationship with her husband was strained, this is sufficient to warrant an unwitting possession instruction.

Here, even assuming Watts-Dyson was entitled to an unwitting possession instruction, Watts-Dyson fails to show prejudice based on the record. Watts-Dyson was charged as an accomplice. The police observed Watts-Dyson emerge from her home to meet with a confidential informant and exchange crack cocaine for money. Inside the home in the rec room near where Watts-Dyson was sleeping, police officers found a black pouch that contained heroin, methamphetamine, powder cocaine, oxycodone, and crack cocaine. Officers also located crystal methamphetamine on a shelf in the rec room. In the master bedroom, officers found documents with Watts-Dyson's name on them, pictures of her, and her clothing.

Marvin told Detective Martin that there were firearms and narcotics in the home. And Marvin testified that he shared the master bedroom with Watts-Dyson.

There was overwhelming evidence to support Watts-Dyson's convictions, including the controlled buy, the location of the controlled substances in the rec room where Watts-Dyson and Marvin were sleeping and in the master bedroom, and Marvin's statements that there were firearms and narcotics in the home. Also, Watts-Dyson was not prejudiced because she was able to argue her theory of the case to the jury. Because the outcome of the trial was not materially affected by the trial court's decision to not give an unwitting possession instruction, Watts-Dyson's challenge fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.