213 P.3d 613 (2009)
STATE of Washington, Respondent,
v.
Earl Gordon OTIS, Jr., Appellant.
No. 37705-5-II.
Court of Appeals of Washington, Division 2.
August 11, 2009.
*614 Manek R. Mistry, Jodi R. Backlund, Backlund & Mistry, Olympia, WA, for Appellant.
Brian Patrick Wendt, Clallam County Prosecuting Attorney's Office, Port Angeles, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 At a bench trial on stipulated facts, the trial court found Earl Gordon Otis, Jr. guilty of manufacturing marijuana, contrary to RCW 69.50.401(1). Otis appeals his conviction, arguing that the trial court erred when it granted the State's motion to preclude him from asserting a medical marijuana caregiver affirmative defensethat Otis was legally growing marijuana as a caregiver for a qualifying patient under the Washington State Medical Use of Marijuana Act (Act), chapter 69.51A RCW. Because the trial court failed to enter written findings of fact and conclusions of law as required for a bench trial under CrR 6.1, we reverse Otis's judgment and sentence. Additionally, we hold that Otis presented sufficient evidence to raise the affirmative defense. Accordingly, we reverse Otis's conviction and remand for a new trial.

FACTS
¶ 2 On March 10, 2007, Port Angeles Police Officers, assisted by Clallam County Sheriff Deputies, executed a search warrant for a juvenile residing at 3070 Eden Valley Road, Port Angeles, Washington. Otis and Stephanie McCarty were at home when the officers conducted their search. While executing the warrant, officers saw a marijuana grow operation[1] that included approximately 75 plants in varying stages of maturity, smoking devices with marijuana residue located throughout the house, a safe containing a scale, and posters and magazines "that promoted marijuana smoking." Clerk's Papers (CP) at 30. Officers arrested Otis and McCarty and read them their Miranda[2] rights. Otis and McCarty both stated that they understood their rights and were willing to talk about the grow operation.
*615 ¶ 3 Otis told officers that he was lawfully growing marijuana for medicinal purposes as a caregiver for R.K.[3] He gave officers a letter dated October 20, 2005, written and signed by Dr. Robert Rakita of Virginia Mason Medical Center. The letter, written on stationary with Virginia Mason Medical Center letterhead, stated:
To Whom it may concern:
Re: [R.K.]
[R.K.] should be able to use marijuana for appetite stimulation. He has tried Marinol, but it is not effective for him & he has lost weight.
CP at 50.
¶ 4 Otis also gave officers a note signed by R.K. and Otis that stated:
I [R.K.] am Terminally Ill with the [acquired immune deficiency syndrome (AIDS)] VIRUS. And I am designating Earl Otis as my Caregiver. In accordance with Chapter 69.51A.040 RCW. On this day Monday November 14th 2005.
CP at 53. On March 14, 2007, the State charged Otis and McCarty with manufacturing marijuana in violation of RCW 69.50.401(1).
¶ 5 The trial court joined Otis and McCarty as co-defendants and both sought to assert a medical marijuana defense at trial. Before trial, the State filed a motion in limine to preclude Otis and McCarty from asserting a medical marijuana defense. Otis filed a response to the State's motion on August 22, 2007. On December 21, 2007, Otis filed an offer of proof pursuant to the trial court's December 4, 2007 memorandum.[4] Otis's offer of proof included a December 21, 2007 letter from Dr. Rakita that stated:
To Whom It May Concern:
RE: [R.K.]
[R.K.] has been a patient of mine, off and on, since 2000. A question has been raised regarding his use of marijuana for medical purposes. As can be seen from his medical records, we had discussed this on multiple occasions in 2000, and again in 2005. He indicated that this was very helpful to improve his appetite and reduce his nausea. For him, the medical benefits outweighed the risks.
Sincerely,
Robert Rakita, MD
CP at 78. Otis also presented the trial court with some of R.K.'s medical records that extensively chronicled R.K.'s unsuccessful use of traditional prescription medications to treat his AIDS symptoms and how medical marijuana effectively treated those symptoms when prescription medications failed.
¶ 6 On December 31, 2007, the trial court issued its memorandum opinion and order granting the State's motion to preclude Otis and McCarty from presenting a medical marijuana primary caregiver defense. The trial court found the October 20, 2005 letter presented to police by Otis did not conform to the statutory definition of "valid documentation."[5] The trial court also found Otis could not bring the letter into conformity through the testimony of Dr. Rakita because the medical marijuana statute required a signed written statement. Finally, the trial court found that because a caregiver must possess valid documentation in advance of questioning or request by law enforcement and must present the valid documentation to law enforcement at the time of the request, the trial court would not consider Rakita's December 21, 2007 letter or R.K.'s medical records discussing his medicinal marijuana use.
¶ 7 Otis and McCarty waived their right to a jury trial and elected to proceed on a stipulated bench trial. Based on the stipulated facts, the trial court found Otis guilty of manufacture of marijuana. On May 1, 2008, the trial court sentenced Otis to four months incarceration with 30 days converted to 240 hours of community restitution, and 12 months of community custody. The trial court did not enter written findings of fact and conclusions of law. Otis timely appeals.

*616 ANALYSIS
¶ 8 As an initial matter, the trial court's failure to enter written findings of fact and conclusions of law following a criminal bench trial requires we reverse Otis's judgment and sentence and remand. State v. Head, 136 Wash.2d 619, 620-21, 964 P.2d 1187 (1998). CrR 6.1(d) states:
In a case tried without a jury, the court shall enter findings of fact and conclusions of law. In giving the decision, the facts found and the conclusions of law shall be separately stated. The court shall enter such findings of fact and conclusions of law only upon 5 days' notice of presentation to the parties.
¶ 9 Because written findings and conclusions facilitate appellate review, reviewing courts will generally refuse to address issues raised on appeal in the absence of such findings and conclusions. See Head, 136 Wash.2d at 624, 964 P.2d 1187. But where the record is sufficient to facilitate review, we may decide issues raised on appeal in the absence of written findings and conclusions. See State v. Denison, 78 Wash. App. 566, 897 P.2d 437 (vacating judgment and remanding for entry of findings and conclusions but deciding issues that did not require findings of fact for their resolution), review denied, 128 Wash.2d 1006, 907 P.2d 297 (1995). Here, Otis challenges only the trial court's grant of the State's pretrial motion to preclude him from presenting an affirmative defense and the record is adequate to address his challenge.
¶ 10 Otis argues that the trial court erred by precluding him from raising a medical marijuana defense because Dr. Rakita's October 20, 2005 letter qualified as "valid documentation" under former RCW 69.51A.010(5)(a) (1999). We agree.

Medical Use of Marijuana Act
¶ 11 In November 1998, the citizens of Washington enacted Initiative 692, the Medical Use of Marijuana Act. The Act is codified in chapter 69.51A RCW. The Act provides patients and caregivers who meet the Act's requirements with an affirmative defense when charged by the State with possessing or manufacturing marijuana.
¶ 12 Under former RCW 69.51A.040(1) (1999):
If charged with a violation of state law relating to marijuana, any qualifying patient who is engaged in the medical use of marijuana, or any designated primary caregiver who assists a qualifying patient in the medical use of marijuana, will be deemed to have established an affirmative defense to such charges by proof of his or her compliance with the requirements provided in this chapter.
¶ 13 In order to affirmatively defend a criminal prosecution for possessing or manufacturing marijuana, a defendant must show by a preponderance of evidence that he has met the requirements of the Act. State v. Ginn, 128 Wash.App. 872, 878, 117 P.3d 1155 (2005), review denied, 157 Wash.2d 1010, 139 P.3d 349 (2006). Preponderance of the evidence means that considering all the evidence, the proposition asserted must be more probably true than not true. Ginn, 128 Wash.App. at 878, 117 P.3d 1155.
¶ 14 Here, we are not asked to decide whether Otis proved a primary caregiver defense by a preponderance of the evidence. Instead, we are asked whether Otis presented sufficient evidence to allow a jury to consider his defense.
¶ 15 In general, a trial court must instruct on a party's theory of the case if the law and the evidence support it; the failure to do so is reversible error. State v. May, 100 Wash.App. 478, 482, 997 P.2d 956 (citing State v. Birdwell, 6 Wash.App. 284, 297, 492 P.2d 249, review denied, 80 Wash.2d 1009, cert. denied, 409 U.S. 973, 93 S.Ct. 346, 34 L.Ed.2d 237 (1972)), review denied, 142 Wash.2d 1004, 11 P.3d 825 (2000). Defendants have the right to present a defense but may not do so by introducing irrelevant or inadmissible evidence. State v. Thomas, 123 Wash.App. 771, 778, 98 P.3d 1258 (2004), review denied, 154 Wash.2d 1026, 120 P.3d 73 (2005). A defendant raising an affirmative defense must offer sufficient admissible evidence to justify giving an instruction on the defense. State v. Janes, 121 Wash.2d 220, *617 237, 850 P.2d 495 (1993). In evaluating whether the evidence is sufficient to support such an instruction, the trial court must interpret the evidence most strongly in favor of the defendant. May, 100 Wash.App. at 482, 997 P.2d 956.

Primary Caregiver
¶ 16 In addition to other requirements under the Act not at issue here,[6] in order for Otis to establish a primary caregiver affirmative defense he must
[p]resent a copy of the qualifying patient's valid documentation ... as well as evidence of designation to act as primary caregiver by the patient, to any law enforcement official requesting such information.
Former RCW 69.51A.040(4)(c) (emphasis added). Former RCW 69.51A.010(5)(a) defines "valid documentation" as:
A statement signed by a qualifying patient's physician, or a copy of the qualifying patient's pertinent medical records, which states that, in the physician's professional opinion, the potential benefits of the medical use of marijuana would likely outweigh the health risks for a particular qualifying patient.[[7]]
¶ 17 Here, Otis presented some evidence that he provided investigating officers with "valid documentation" as required under the Act. The State asserts that Dr. Rakita's October 2005 letter does not meet the Act's definition of "valid documentation" because it does not "strictly adhere to the language set forth in the statute." Br. of Resp't at 4. But contrary to the State's assertion, nothing in the Act requires "valid documentation" to contain the exact language of the statute. Instead, the statute merely requires that the physician's statement convey the physician's professional opinion that the potential benefits of the medical use of marijuana would likely outweigh the health risks for a particular qualifying patient.
¶ 18 The State's reliance on State v. Shepherd, 110 Wash.App. 544, 41 P.3d 1235, review denied, 147 Wash.2d 1017, 56 P.3d 992 (2002), is misplaced. In Shepherd, Division Three of this court found a physician's statement insufficient to meet the requirements of "valid documentation" where the statement read:
I have diagnosed and am treating the above named patient for a terminal illness or debilitating condition as defined in RCW 69.51A.010 (should the conditions be listed, a check list? I think not as it may be seen as violating physician-patient confidentiality).
I have advised the above named patient about the potential risks and benefits of the medical use of marijuana. I have assessed the above named patient's medical history and medical condition. It is my medical opinion that the potential benefits of the medical use of marijuana may outweigh the health risks for this patient.
110 Wash.App. at 547, 41 P.3d 1235 (emphasis added).
¶ 19 Division Three of this court found "may outweigh the health risks" to be insufficient because the statute requires a stronger showing on necessity than simply "may."
The required proof is tantamount to the level of certainty required of expert opinions *618 in courts. And a well-developed body of law in this state sets out the requirements for admission of professional opinions when the expert must express an opinion on a "more likely than not" basis. Expert testimony should express "a reasonable probability rather than mere conjecture or speculation."
Shepherd, 110 Wash.App. at 551, 41 P.3d 1235 (quoting Davidson v. Mun. of Metro. Seattle, 43 Wash.App. 569, 571, 719 P.2d 569, review denied, 106 Wash.2d 1009 (1986)).
¶ 20 Nothing in Shepherd suggests the narrow reading of the Act's requirements for "valid documentation" that the State suggests. Instead, Shepherd held that the Act required "valid documentation" to contain a physician's professional opinion on a "more likely than not" basis. 110 Wash.App. at 551, 41 P.3d 1235. Here, unlike in Shepherd, a fair reading of R.K.'s physician's note is that R.K. had tried prescription medication unsuccessfully to increase his appetite and stop life-threatening weight loss and that because of the failure of prescription medications to counter his weight loss, R.K. "should be able to use marijuana for appetite stimulation."[8] CP at 50.
¶ 21 Furthermore, the State's narrow reading of the Act's requirements for "valid documentation" runs counter to the stated purpose of the Act. Former RCW 69.51A.005 (1999) sets forth the purpose and intent of the Act:
The people of Washington state find that some patients with terminal or debilitating illnesses, under their physician's care, may benefit from the medical use of marijuana....
The people find that humanitarian compassion necessitates that the decision to authorize the medical use of marijuana by patients with terminal or debilitating illnesses is a personal, individual decision, based upon their physician's professional medical judgment and discretion.
Therefore, the people of the state of Washington intend that:
Qualifying patients with terminal or debilitating illnesses who, in the judgment of their physicians, would benefit from the medical use of marijuana, shall not be found guilty of a crime under state law for their possession and limited use of marijuana;
Persons who act as primary caregivers to such patients shall also not be found guilty of a crime under state law for assisting with the medical use of marijuana.
¶ 22 "A fundamental rule of statutory construction is that the court must interpret legislation consistently with its stated goals." Tunstall v. Bergeson, 141 Wash.2d 201, 211, 5 P.3d 691 (2000) (citing Weyerhaeuser Co. v. Tri, 117 Wash.2d 128, 140, 814 P.2d 629 (1991)), cert. denied, 532 U.S. 920, 121 S.Ct. 1356, 149 L.Ed.2d 286 (2001). To ascertain legislative intent, we look to the statute's declaration of purpose. Donohoe v. State, 135 Wash.App. 824, 844, 142 P.3d 654 (2006). Consistent with the Act's stated purpose, we hold that "valid documentation" merely requires a written statement that generally conveys a physician's professional opinion that the benefits of the medical use of marijuana outweigh the risks for a particular patient, without requiring the physician to express his or her professional opinion using the specific language in the statute.
¶ 23 Although given evidence showing the extent of Otis's grow operation, it is unlikely that his affirmative defense will be successful; his documentation was sufficient to meet the prima facie threshold to allow him to present a medical marijuana primary caregiver *619 defense under the statute. Accordingly, we reverse Otis's judgment and sentence and remand for a new trial.
We concur: HOUGHTON, P.J., and HUNT, J.
NOTES
[1] The original search warrant was not related to the marijuana grow operation. Officers obtained a second warrant after discovering marijuana during their initial search.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] We use R.K.'s initials to protect his privacy.
[4] The trial court's December 4, 2007 memorandum is not in the record on appeal.
[5] The trial court's memorandum opinion states that the parties agreed the October 20, 2005 letter did "not completely conform to the statutory definition." CP at 70. But nothing in the record shows such an agreement.
[6] Under former RCW 69.51A.010(2), a "primary caregiver" must be 18 years of age or older, responsible for the housing, health, or care of the patient, and must be designated in writing by a patient to perform the duties of primary caregiver. Additionally, under former RCW 69.51A.040(4)(b), (d), and (e), the primary caregiver shall possess no more marijuana than is necessary for the patient's personal medical use, not exceeding the amount necessary for a 60-day supply; be prohibited from consuming marijuana obtained for the personal medical use of the patient for whom the individual is acting as primary caregiver; and be the primary caregiver to only one patient at any one time.
[7] Recent amendments to the Act lessen the documentation burden for caregivers to raise the affirmative defense. Effective July 22, 2007, the legislature amended former RCW 69.51A.010(5)(a) by replacing "the potential benefits of the medical use of marijuana would likely outweigh the health risks for a particular qualifying patient" with "the patient may benefit from the medical use of marijuana." RCW 69.51A.010(5)(a). But former RCW 69.51A.010(5)(a) applies here because it was the statute in effect at the time of Otis's offense. State v. Schmidt, 143 Wash.2d 658, 673-74, 23 P.3d 462 (2001).
[8] While it is not clear from the face of Dr. Rakita's October 2005 letter how the medical use of marijuana to stimulate appetite was beneficial to R.K., the plain language of the Act does not require "valid documentation" to list the patient's condition, here AIDS wasting syndrome. We interpret "valid documentation" not to require such disclosure as this may conflict with one or more purposes of the patient-physician confidentiality statute. RCW 5.60.060(4); Carson v. Fine, 123 Wash.2d 206, 213, 867 P.2d 610 (1994) ("One purpose of the statutory privilege is to surround patient-physician communications with a `cloak of confidentiality' to promote proper treatment by facilitating full disclosure of information. Another purpose of the privilege is to protect the patient from embarrassment or scandal which may result from revelation of intimate details of medical treatment") (citation omitted).