215 P.3d 1036 (2009)
STATE of Washington, Respondent,
v.
Stephanie Leann McCARTY, Appellant.
No. 37693-8-II.
Court of Appeals of Washington, Division 2.
September 15, 2009.
*1037 Eric J. Nielsen, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Brian Patrick Wendt, Clallam County Prosecuting Attorney's Office, Port Angeles, WA, for Respondent.
HUNT, J.
¶ 1 Stephanie Leann McCarty appeals her marijuana manufacture conviction, following a stipulated-facts bench trial. She argues that we should reverse and remand for retrial because the trial court erred when it (1) prohibited her (and her co-defendant, Earl Otis) from presenting a "designated primary caregiver" affirmative defense under the Washington State Medical Use of Marijuana Act (the Act), chapter 69.51A RCW; and, alternatively, (2) failed to enter written findings of fact and conclusions of law required under CrR 6.1(d). In her supplemental brief, which we requested, she further argues that we should reverse her conviction because she was entitled to assert a medical marijuana defense under RCW 69.51A.050(2), which prohibits prosecution for any criminal offense "solely for being in the presence or vicinity of medical marijuana or it use" as authorized under the Act. The State concedes that remand for entry of CrR 6.1(d) findings of fact and conclusions of law is required.
¶ 2 We hold that (1) McCarty is not entitled to present an affirmative defense as a "designated primary caregiver" under former *1038 RCW 69.51A.040 (1999) of the Act because she is not a named designated caregiver; and (2) nevertheless, McCarty is entitled to present a defense under RCW 69.51A.050(2)-that she cannot be convicted of manufacturing marijuana based solely on her being in the presence or vicinity of medical marijuana.[1] We agree with both parties that this case would normally require remand for entry of findings of fact and conclusions of law under CrR 6.1(d). But because we vacate McCarty's conviction and remand for a new trial in which she may present a RCW 69.51A.050(2) defense, we do not remand for entry of such findings and conclusions because they would be superfluous.

FACTS

I. Medical Marijuana Primary Caregiver Documentation
¶ 3 On March 10, 2007, the police executed a search warrant[2] at 3070 Eden Valley Road, Port Angeles, Washington. Stephanie Leann McCarty and Earl Otis were home when the officers conducted the search; they had lived together at the residence for two years. During the search, the officers discovered (1) approximately 75 marijuana plants in varying stages of maturity; (2) several smoking devices that contained marijuana residue, some in the master bedroom and some inside the bed's headboard; (3) a safe containing a scale; and (4) posters and magazines "that promoted marijuana smoking."
¶ 4 Otis provided the officers with a letter from RK[3] authorizing Otis to be his (RK's) designated caregiver under the Act. This letter stated:
I, [RK], am terminally ill with the AIDS VIRUS. And I am designating Earl Otis as my caregiver. In accordance with Chapter 69.51A.040 RCW. On this day Monday November 14th, 2005.
Clerk's Papers (CP) at 45. Otis also provided the officers with an October 20, 2005 document on Virginia Mason Medical Center letterhead from Dr. Robert Rakita, stating:
To Whom it May Concern:
RE: [RK]
[RK] should be able to use marijuana for appetite stimulation. He has tried Marinol, but it is not effective for him and he has lost weight.
CP at 42.

II. Procedure
¶ 5 The State charged McCarty and Otis with manufacturing marijuana. They proceeded to a bench trial.

A. State's Motion in Limine
¶ 6 The State moved in limine to preclude McCarty and Otis from asserting a medical-marijuana designated-primary-caregiver defense. The State argued that Dr. Rakita's October 20, 2005 note did not qualify as "valid documentation" under the Act because the note did not state that the potential benefits of medical marijuana use would likely outweigh the health risks to RK.[4]
*1039 ¶ 7 McCarty and Otis objected to the State's motion in limine, arguing that (1) the necessary statutory language was implied, and (2) the court should allow them to establish that the note was adequate at trial or through an offer of proof. Otis and McCarty offered additional documentation that they had not presented to the officers at the time of the search. These documents included a second letter from Dr. Rakita and portions of RK's medical records that Otis and McCarty used to attempt to clarify Dr. Rakita's October 20, 2005 note. Otis and McCarty argued that these additional documents "adequately support[ed] the thesis that the standards for primary caregiver for this case under former RCW 69.51A.040 have been met." CP at 67. But none of these documents mentioned McCarty or otherwise stated that RK had designated her as his caregiver; they named only Otis.
¶ 8 After considering Otis and McCarty's offer of proof, the trial court ruled that they failed to present valid documentation under the Act to the requesting law enforcement officials at the time of the search. The trial court granted the State's motion in limine, precluding McCarty and Otis from asserting a medical-marijuana designated-primary-caregiver defense.

B. Bench Trial
¶ 9 Based on stipulated police reports facts, a different superior court judge found McCarty and Otis guilty of manufacturing marijuana. In its oral ruling, the trial court emphasized that the officers had (1) found a considerable amount of marijuana inside the residence, (2) found marijuana and marijuana smoking devices throughout the residence, (3) found marijuana and marijuana smoking devices inside the bed's headboard in the bedroom Otis and McCarty shared, (4) found a set of scales and some packaged marijuana inside the residence, (5) smelled both fresh and smoked marijuana inside the residence, and (6) stated that it did not believe Otis's assertion to officers that he was solely responsible for the grow operation. The trial court found that both Otis and McCarty "were engaged in the manufacture of marijuana in a residence over which they exercised exclusive control for a period of at least two years." Report of Proceeding, (Ap.17, 2007) at 14. But the trial court did not explain the specific factual basis on which it found that McCarty had participated in the manufacture.[5] Nor did it enter written findings of fact or conclusions of law explaining its reasoning.
¶ 10 McCarty filed an appeal.[6] We later requested and received supplemental briefing from the parties addressing whether McCarty is entitled to assert co-defendant Otis's medical marijuana defense where she is not also a named designated primary caregiver for RK.

ANALYSIS

I. Affirmative Caregiver Defense Unavailable to McCarty
¶ 11 McCarty argues that the trial court erred (1) in precluding her raising a designated-primary-caregiver defense under the Act; and (2) in determining that neither Dr. Rakita's October 20, 2005 note nor the doctor's supplemental letter amounted to "valid documentation" under the Act.[7]

*1040 A. Standard of Review
¶ 12 A defendant raising an affirmative defense must offer sufficient admissible evidence to justify using the defense. State v. Ginn, 128 Wash.App. 872, 879, 117 P.3d 1155 (2005) (citing State v. Janes, 121 Wash.2d 220, 236-37, 850 P.2d 495 (1993)), review denied, 157 Wash.2d 1010, 139 P.3d 349 (2006). In evaluating whether the defendant has met this burden, "the trial court must interpret the evidence most strongly in favor of the defendant." Ginn, 128 Wash. App. at 879, 117 P.3d 1155.

B. Medical Use of Marijuana Act's Affirmative Statutory Defense
¶ 13 In November 1998, Washington voters passed Initiative 692, which "authorized patients with terminal or debilitating illnesses to use marijuana for medical purposes based on their treating physicians' professional medical judgment and discretion." State v. Butler, 126 Wash.App. 741, 748, 109 P.3d 493 (2005). "The legislature codified this initiative in chapter 69.51A RCW, the Medical Use of Marijuana Act, thereby acknowledging that some patients with terminal or debilitating illnesses may benefit from the medical use of marijuana." Butler, 126 Wash.App. at 748, 109 P.3d 493. The Act created an affirmative defense that allowed qualifying patients and their designated providers to avoid criminal prosecution based on their possession of marijuana under specific circumstances. See Id. (citing former RCW 69.51 A.040(1)).
¶ 14 Former RCW 69.51A.040, the statute in effect at the time of this offense, established the affirmative defense as follows:
(1) If charged with a violation of state law relating to marijuana, any qualifying patient who is engaged in the medical use of marijuana, or any designated primary caregiver who assists a qualifying patient in the medical use of marijuana, will be deemed to have established an affirmative defense to such charges by proof of his or her compliance with the requirements provided in this chapter. Any person meeting the requirements appropriate to his or her status under this chapter shall be considered to have engaged in activities permitted by this chapter and shall not be penalized in any manner, or denied any right or privilege, for such actions.
. . . .
(4) The designated primary caregiver shall:

(a) Meet all criteria for status as a primary caregiver to a qualifying patient;

. . . .
(c) Present a copy of the qualifying patient's valid documentation required by this chapter, as well as evidence of designation to act as primary caregiver by the patient, to any law enforcement official requesting such information.
(Emphasis added). Former RCW 69.51A.010(2) (1999) defined "primary caregiver" as follows:
"Primary caregiver" means a person who:
(a) Is eighteen years of age or older;
(b) Is responsible for the housing, health, or care of the patient;
(c) Has been designated in writing by a patient to perform the duties of primary caregiver under this chapter.

(Emphasis added).[8]

C. McCarty Not a "Designated Primary Caregiver"
¶ 15 At no time did McCarty present documentation that RK had designated her as his primary caregiver under the Act. Nor has McCarty asserted that such documentation exists. On the contrary, the record *1041 shows that RK designated only Otis as a primary caregiver. Instead, McCarty assumes that Otis's designation as RK's caregiver somehow confers on her the same potential status and defense, if he can meet the statutory prerequisites. But the law does not allow such implied or transferred designated caregiver status.
¶ 16 The plain language of former RCW 69.51A.040(1) establishes that the Act's affirmative defense is available solely to individuals who have a documented, well defined "primary caregiver" status under the Act. The first sentence of former RCW 69.51A.040(1) provides that the affirmative defense for marijuana possession[9] is available to only two specific classes of individuals: (1) any qualifying patient who is engaged in the medical use of marijuana; or (2) any designated primary caregiver who assists a qualifying patient. Former RCW 69.51A.040(4)(a) and (c) also emphasize that the person claiming "designated primary caregiver" status under the Act must (1) "[m]eet all criteria for status as a primary caregiver to a qualifying patient," and (2) present "evidence of designation to act as primary caregiver by the patient."
¶ 17 The Act's plain language makes clear that the affirmative "caregiver" defense is not available to anyone other than the person whom a qualifying patient expressly designates as his or her caregiver. Conversely, the Act's plain language does not, in any way, purport to extend this affirmative defense to anyone who might happen to be associated with a person who may be a named qualified primary caregiver under the Act. Thus, for this statutory affirmative "caregiver" defense to be available to McCarty, the Act requires her to show that RK had designated her as his caregiver.[10] But the record contains evidence of only Otis's designation as RK's primary caregiver; there is no evidence that RK also designated McCarty. And regardless of whether Dr. Rakita's later note qualified as "valid documentation," neither this note nor any other documentation McCarty offered at trial named her as RK's primary caregiver. Thus, as a matter of law, McCarty was not entitled to present this statutory affirmative defense of designated caregiver.
¶ 18 Although the parties below did not address this issue and the trial court did not consider or decide the motion in limine on this basis, we may affirm the trial court on any ground the record supports. State v. Michielli, 132 Wash.2d 229, 242-43, 937 P.2d 587 (1997) (citing Tropiano v. City of Tacoma, 105 Wash.2d 873, 876, 718 P.2d 801 (1986)). Accordingly, we hold that the trial court did not err when it precluded McCarty from presenting the Act's "qualified primary caregiver" defense.

II. Presence or in Vicinity of Medical Marijuana
¶ 19 In her supplemental brief, McCarty argues that she was/is also entitled to raise an affirmative defense under RCW 69.51A.050(2), which prohibits the State from prosecuting her based solely on her being present in the vicinity of medical marijuana. We agree.
¶ 20 RCW 69.51A.050(2) provides:
No person shall be prosecuted for constructive possession, conspiracy, or any other criminal offense solely for being in the presence or vicinity of medical marijuana or its use as authorized by this chapter.
(Emphasis added). When the trial court ruled that Otis and McCarty could not present a medical marijuana defense, the parties tried the case to the bench based on stipulated police reports; consequently, the record is not fully developed. Nevertheless, based on the stipulated facts, there is sufficient evidence, or lack of evidence, to support *1042 McCarty's entitlement to present a defense under RCW 69.51A.050(2).[11]
¶ 21 The State charged McCarty with manufacturing the marijuana in the home she shared with Otis. To establish her guilt on retrial, even under an accomplice theory, the burden will be on the State to prove more than her mere presence. But as McCarty's counsel acknowledged during oral argument, the burden under RCW 69.51A.050(2) will be on McCarty to prove to the finder of fact that she meets the requirements of this affirmative defense.[12] These are issues for the trier of fact to consider, and McCarty is entitled to present her defense without regard to the likelihood of her success in meeting her burden.

III. Written Findings of Fact and Conclusions of Law
¶ 22 As an alternative to reversing her conviction and remanding for retrial, McCarty asks us to remand for entry of written findings of fact and conclusions of law for the stipulated bench trial, as required under CrR 6.1(d). The State concedes this error and agrees. We, too, agree that "[r]emand for entry of written findings and conclusions is the proper course" when such a defect occurs. State v. Head, 136 Wash.2d 619, 622, 964 P.2d 1187 (1998) (citing State v. Mallory, 69 Wash.2d 532, 533-34, 419 P.2d 324 (1966)).
¶ 23 But because we reverse and remand for a new trial to allow McCarty to present a defense under RCW 69.51A.050(2), it would waste judicial resources to remand for entry of written findings and conclusions of law for the bench trial, which resulted in a verdict that we now reverse. Therefore, we do not exercise our option under RAP 9.10 to require entry of findings of fact and conclusions of law on remand.
¶ 24 We vacate McCarty's conviction[13] and remand for a new trial, at which McCarty will be entitled to present a defense under RCW 69.51A.050(2);[14] she will not be entitled to present an affirmative defense as a "designated primary caregiver" under former RCW 69.51A.040.
We concur: HOUGHTON, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] We recognize that in asserting an affirmative defense as a designated primary caregiver under former RCW 69.51A.040 at trial, McCarty did not articulate that she was also entitled to present a medical marijuana defense under RCW 69.51A.050(2). But once the trial court ruled that neither Otis nor McCarty was entitled to present a medical marijuana defense under RCW 69.51A.040, it would have been futile for McCarty to assert a defense under RCW 69.51A.050(2), which would have been dependent on Otis's being able to establish his status as a "designated primary caregiver" under former RCW 69.51A.040, a possibility the trial court had foreclosed.

We further note that McCarty's ability to raise the RCW 69.51 A.050(2) defense on retrial will depend on whether she or Otis can establish his defense under former RCW 69.51A.040 for purposes of all the marijuana that they were charged with manufacturing illegally.
[2] The original search warrant was not related to the marijuana grow operation. After the officers discovered the marijuana plants during the initial search, they obtained a second warrant.
[3] We use RK's initials to protect his privacy.
[4] The State also argued that the defendants possessed more than a 60-day supply of marijuana. Ruling that quantity was a factual issue, the trial court did not further address this issue while considering the State's motion in limine. Later, the trial court assured defense counsel it was not considering the number of plants in deciding whether the defendants were entitled to a medical marijuana defense. The only other time quantity was mentioned was during Otis's sentencing.
[5] In its oral ruling, the trial court seemed to emphasize the presence of the drugs and, impliedly, the manufacturing process throughout the home, which the two defendants shared. Although the trial court did not articulate that these facts rendered McCarty more than a mere passive observer, these facts appear to be the basis for its reasoning. Again, without written findings of fact and conclusions of law, we cannot discern the trial court's reasoning with any precision.
[6] Otis has filed a separate appeal, which we have linked with McCarty's appeal. See State v. Otis, ___ Wash.App. ___, 213 P.3d 613, (2009).
[7] More specifically, McCarty contends that (1) Dr. Rakita's October 20, 2005 note authorizing RK's use of medical marijuana was adequate under the 2007 amendments to the Act, which amendments she asserts operate retroactively; (2) the trial court erred when it held that Dr. Rakita's October 20, 2005 note was not "valid documentation" under the statutes in effect at the time of the offense; and (3) the trial court erred when it failed to find that the documentation she and Otis provided in their offer of proof cured any potential defect in Dr. Rakita's October 20, 2005 note. We do not address these arguments because these documents name only Otis as the primary caregiver; none name McCarty.
[8] Former RCW 69.51A.040(1) and the current version of the statute, RCW 69.51A.040(2), read the same except that the Legislature replaced the former phrase "designated primary caregiver" with the new phrase "designated provider." Laws of 2007, ch. 371, § 5. Under the 2007 amendments, a person claiming to be a designated provider must still establish that a qualified patient has designated him or her as the provider in writing. RCW 69.51A.010(1)(b). Thus, even assuming, without addressing or deciding, that the 2007 amendments apply retroactively, these amendments would not alter our analysis.
[9] Former RCW 69.51A.040(1) was worded in the singular, stating, "Any person meeting the requirements appropriate to his or her status under this chapter shall be considered to have engaged in activities permitted by this chapter and shall not be penalized in any manner, or denied any right or privilege, for such actions." (Emphasis added).
[10] Based on this clear statutory language, we also reject McCarty's related argument that she can raise this caregiver/provider defense as Otis's "accomplice," assuming, without deciding, that Otis is able to establish such a defense on his own behalf on retrial.
[11] The voters enacted this statute by initiative in 1999; it has not been amended since. We find no published cases addressing RCW 69.51A.050 for any purpose.
[12] For example, as the State notes in its supplemental brief, the burden of establishing any type of medical marijuana defense involves proving that the quantity of marijuana being manufactured is appropriate for the named patient's medical purposes under the Act. See Supplemental Brief of Respondent, page 8, citing State v. Shepherd, 110 Wash.App. 544, 550, 41 P.3d 1235, review denied, 147 Wash.2d 1017, 56 P.3d 992 (2002). Also, as discussed at oral argument, there was evidence of private use of marijuana in the defendants' home, which might jeopardize their medical marijuana defense. See Supplemental Brief of Respondent, page 8, citing State v. Mullins, 128 Wash.App. 633, 639-40, 116 P.3d 441 (2005).
[13] We note that without entry of written findings of fact and conclusions of law, it is arguable that there is no formal conviction to vacate. See Head, 136 Wash.2d at 622, 964 P.2d 1187 (trial court's oral opinion and memorandum opinion are not formal orders and have no final or binding effect) (citing Mallory, 69 Wash.2d at 533-34, 419 P.2d 324). But we further note that McCarty asks first for reversal and retrial and only alternatively for remand to enter findings of fact and conclusions of law. Because we agree with McCarty that disallowing her affirmative defense was reversible error, we do not further address this alternative remedy.
[14] Again, we acknowledge that in order to establish this statutory defense, McCarty must show that she was in the presence of medical marijuana "authorized" by the Act. RCW 69.51A.050(2). In establishing this defense she must establish the legality of the marijuana manufacture by a designated care provider under former RCW 69.51A.040 of the Act. In Otis's linked appeal, we held that it was reversible error for the trial court to prohibit his presenting a defense under this designated care provider statute. See State v. Otis, ___ Wash.App. ___, 213 P.3d 613 (2009).