**FILED**
**SEPTEMBER 18, 2018**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Involuntary Treatment of | ) ) ) | No. 35118-1-III |
| J.M.M. | ) ) ) ) ) | UNPUBLISHED OPINION |

SIDDOWAY, J. — J.M.M. challenges a grave disability finding in an order detaining him for 14 days of involuntary mental health treatment. While the fact that he has completed the commitment period does not render his challenge moot, his stipulation to a finding of grave disability at the end of the 14 days does. We dismiss the appeal.

FACTS AND PROCEDURAL BACKGROUND

A few days after New Year's, 2017, 22-year-old J.M.M., accompanied by his father, voluntarily checked himself into the psychiatric ward of Sacred Heart Medical Center in Spokane.

Four days into his stay, he asked to be released and Sacred Heart medical staff responded by petitioning first for a 72-hour evaluation and treatment, and thereafter, for a 14-day detention for involuntary treatment. The petition alleged that as a result of his mental disorder, J.M.M. presented a likelihood of serious harm to self, a likelihood of serious harm to others, and was gravely disabled. The allegation of grave disability on the form petition had boxes "A" and "B" that could be marked; only "A" was marked. Sealed Clerk's Papers (CP) at 11.

At the probable cause hearing on January 11, 2017, the State called Heather Soares, Ph.D., a psychologist, as its witness. J.M.M. was not under Dr. Soares's direct care but she had reviewed his medical records and spoken with him that morning. J.M.M. concedes on appeal that Dr. Soares provided substantial evidence that he presented a likelihood of serious harm to himself and to others, so we will not recount that testimony.

The petition for J.M.M.'s involuntary commitment also alleged that he "continues to place himself at risk of serious physical harm due to not being willing/able to provide for his health and safety needs, and does not demonstrate good faith regarding his treatment." CP at 12. In connection with that allegation, Dr. Soares provided the following relevant testimony:

- She testified that J.M.M. was medication compliant, although she later clarified that of the several drugs being administered, he had refused the prior evening's dose of Risperdal. She testified "[h]e was compliant with

2

that up until last night when he refused it for court." Sealed Report of Proceedings (RP) at 56.

- Asked how he was eating, sleeping, and taking care of daily activities, she testified "[H]e hasn't been up on the unit very long and I haven't been able to interact with him until this point today." RP at 41. She described him as "pretty disheveled" and that his room at the hospital was "filthy" with something spilled on his blankets, floor and the bed. *Id.*
- Asked about the risk to J.M.M. for serious physical harm, the risk related to his failure to provide for his essential human needs that she identified was that "his medications are not yet stabilized" as he "was just started on one of them today." RP at 42.
- Asked about J.M.M.'s recognition of his need to take his medications, she testified that she didn't know if he was willing to continue taking his medications or not.
- Asked if J.M.M. would have a place to live if discharged, she testified, "No. He's homeless." RP at 45.
- Asked if he had a source of income, she testified, "Not that I'm aware of." *Id.*
- Asked if he had a way to access medication, she testified, "He's not currently enrolled in services, so, I don't know if he has a primary care provider that he would see, but he . . . doesn't have mental health services." *Id.*

J.M.M. testified in his own defense, although due to a recording malfunction, the report of proceedings includes only a portion of his direct testimony and nothing that took place thereafter. He testified that he had checked himself in voluntarily because he believed he had a mental health disorder. He testified that he had hoped to be diagnosed but claimed that the one psychiatrist he had seen spent almost no time with him, "ask[ing] me like five questions." RP at 59. He testified that if he was given a full "psych" evaluation and was monitored, then medication "would probably be very helpful," but he was wary about being medicated without an evaluation. RP at 61. He attributed his

3

wariness about medications to seeing his mother, who is mentally ill, taken "on and off" different drugs over the years. *Id.*

J.M.M. claimed to have been living with a friend at the time he checked himself into the hospital and testified that upon discharge he could live with the friend again. He testified he had been unable to call his friend without access to a phone number stored on his cell phone.

At the conclusion of the hearing, the court ordered J.M.M. detained for involuntary commitment for 14 days, finding the State had proved all of its alleged bases for commitment. On the issue of "grave disability" as that term was defined by former RCW 71.05.020(17) (2015), the court made the following ultimate finding:

> The Respondent presently presents a substantial risk of danger of serious physical harm resulting from a failure to provide for his/her essential health and safety needs. There is recent, tangible evidence of a failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded.

CP at 18. The only detail in support was provided by a handwritten finding:

> The Respondent is not currently stable and requires further inpatient treatment. He has no stable housing, source of income, or insight into his need to take medication for his current symptoms.

CP at 23.

At the completion of the 14-day involuntary commitment, J.M.M. was committed to a further period of involuntary treatment not to exceed 90 days. The order was based

4

on a "stipulation by counsel in Respondent's presence and with his/her agreement." CP at 44. It included findings that J.M.M. was gravely disabled on both statutory bases provided by former RCW 71.05.020(17). The order for the 90-day commitment was later amended to release him to less restrictive alternative treatment. J.M.M. appeals.

ANALYSIS

J.M.M.'s only assignment of error on appeal is to the finding in the January 11 order, which detained him for 14 days, that he was gravely disabled as that term is defined in former RCW 71.05.020(17)(a).

Under former RCW 71.05.240(3)(a) (2016), an individual may be detained for involuntary mental health treatment not to exceed 14 days if a superior court finds, based on a proper petition and timely probable cause hearing, "that such person, as the result of mental disorder, *presents a likelihood of serious harm, or is gravely disabled*," and a less restrictive alternative to involuntary detention is not in his or her best interest. (Emphasis added.) J.M.M. concedes on appeal that the evidence at the probable cause hearing established that he presented a likelihood of serious harm, a sufficient basis for the 14-day detention. He challenges the finding that he was gravely disabled, which he argues can have collateral consequences since such findings are given great weight in subsequent commitment proceedings. *See* RCW 71.05.012, .245(3). For this reason, challenges to completed periods of involuntary commitment are not ordinarily moot. *In re Det. of M.K.*, 168 Wn. App. 621, 625-26, 279 P.3d 897 (2012).

5

"Gravely disabled" is defined by former RCW 71.05.020(17) to include two types of disability, either of which may serve as the basis for involuntary commitment. *In re Det. of LaBelle*, 107 Wn.2d 196, 202, 728 P.2d 138 (1986). Only the first type was alleged by the petition and found by the January 11 commitment order. As defined by former RCW 71.05.020(17)(a), "'[g]ravely disabled'" means a condition in which a person, as a result of a mental disorder: (a) is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety." To prove that an individual is gravely disabled under this definition, "the State must present recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded." *LaBelle*, 107 Wn.2d at 204-05. Under the former statute, "the failure or inability to provide for these essential needs must be shown to arise as a result of mental disorder and not because of other factors." *Id.*

Where a 14-day commitment is at issue, the burden of proof is by a preponderance of the evidence. Former RCW 71.05.240(3)(a). "Preponderance of the evidence means that considering all the evidence, the proposition asserted must be more probably true than not true." *State v. Otis*, 151 Wn. App. 572, 578, 213 P.3d 613 (2009).

Even measured by the preponderance standard, the State's evidence appearing in our record of the January 11 hearing was not the required recent and tangible evidence

that J.M.M. had failed or was unable to provide for his own food, clothing, shelter, medical treatment, and like needs. Evidence that an individual is homeless, disheveled, and may or may not be willing to continue medications upon discharge, without more, is not enough.

The State argues that we should refuse to consider J.M.M.'s challenge to the sufficiency of evidence because he has failed to meet his burden of perfecting the record, given the absence of a record as to what happened after the recording of the hearing stopped. But cases on which the State relies deal with evidence that an appellant could have provided, but did not. Here, it is conceded that J.M.M. provided as complete a verbatim report of proceedings as was possible. J.M.M. has suggested that if we find the record insufficient, we should remand for trial counsel to prepare a narrative report of proceedings.

More persuasive is the State's argument that J.M.M.'s appeal is moot in light of his stipulation to the 90-day commitment order. The order stipulated that J.M.M. was gravely disabled in both of the ways defined by former RCW 71.05.020(17) as of January 25, 2017—only 14 days following entry of the January 11 order. And an order involuntarily committing an individual for 90 days must be proved by clear, cogent and convincing evidence. RCW 71.05.310. Given the great weight that the court is authorized to attach to the January 25th order in any future commitment proceedings, we

7

No. 35118-1-III
*In re Involuntary Treatment of J.M.M.*

see no effective relief we can provide by remanding for completion of the record and then resolving the issue raised in this appeal.

The appeal is dismissed as moot.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

8