IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondents,<br><br>v.<br><br>MORRIS GAYLORD BAKER JR.,<br><br>               Appellant. | No. 79848-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

ANDRUS, A.C.J. — Morris G. Baker, Jr. appeals his conviction for second degree assault. He argues that (1) the trial court erred in excluding impeachment evidence of the victim, (2) he received ineffective assistance of counsel, and (3) the court erred by imposing an interest accrual provision on his legal financial obligations (LFOs). He also asserts other ineffective assistance of counsel claims in a pro se Statement of Additional Grounds. We affirm Baker's conviction but remand with instructions to strike the interest accrual provision in his judgment and sentence.

FACTS

On June 22, 2018, Baker and Daniel Stevens were involved in an altercation while in custody at the Snohomish County Jail. Stevens suffered injuries, received medical treatment at a hospital, and returned to the jail that same day. Based on these events, the State charged Baker with one count of assault in the second

Citations and pin cites are based on the Westlaw online version of the cited material.

degree while on community custody. Baker pleaded not guilty, claiming that his actions were taken in self-defense.

At trial, Stevens testified he was lying on the top bunk of their cell when Baker stood up in a nearby chair and angrily asked Stevens if he knew where he was. When Stevens responded that he was in jail, Baker grabbed Stevens's shirt and tried to pull him off the bed. In the process, Baker lost his footing and nearly fell off the chair. Stevens got off his bed, told Baker that he was going to alert the jail staff, and attempted to do so by pressing the intercom button in the cell. Baker prevented Stevens from pressing the button.

Once off the bed, Baker slapped Stevens's glasses off of his face. Baker punched Stevens and pulled him around, causing Stevens to lose his balance and fall to the floor. Baker then stomped on Stevens's stomach and hip, and kicked him in the face. When Baker kicked Stevens's face, his long toenails lacerated Stevens's eyelid, which started to bleed. Stevens's head struck the concrete, resulting in a momentarily loss of consciousness. Baker then placed his weight on Stevens's chest, making it difficult to breathe, and told Stevens that Stevens "wasn't going to tell the [correctional officers] anything." Stevens did not attempt to strike Baker because the "only thing on [his] mind was getting out of jail."

Baker then started to apologize and gave Stevens a towel to clean the blood off his face. Stevens was afraid he had sustained permanent eye damage because he could not see at all. Baker did not want to allow Stevens to call for help because he was concerned he would get into trouble. Stevens told Baker

that he would say he injured himself from falling off his bed to convince Baker to press the call button.

After calling for help, Stevens received medical care for his injury at Harborview Medical Center. Stevens recounted to the medical providers what had occurred in the jail cell, underwent a number of tests to test his vision, and received stitches to close the laceration.

On cross-examination, Baker's attorney questioned Stevens about the length of this assault and his contention he did not strike Baker or fight back, and challenged his recollection of events due to his brief period of unconsciousness. Defense counsel did not attempt to impeach Stevens on any inconsistent statements he may have made to his medical providers. At the conclusion of his cross-examination, defense counsel did not reserve the right to recall Stevens.

Snohomish County Corrections Deputy Megan McKinney testified that, shortly after the lunch hour, she recognized Baker's voice over the intercom saying that his cellmate was bleeding. When she arrived at the cell and unlocked the door, Deputy McKinney saw Baker was uninjured but noticed Stevens had a deep laceration above his eye and was bleeding. Stevens's eye had blackened, was swollen, and appeared to need stiches.

When Deputy McKinney asked what happened, Stevens said "I've been assaulted." Baker, however, told her Stevens had fallen off his bunk. No one other than Baker and Stevens were in the cell when the incident occurred and there were no video recordings of the incident. Deputy McKinney removed Stevens from the

cell and confirmed she arranged for him to be taken to Harborview Medical Center for treatment.

Dr. Joanne Ho, an ophthalmologist at Harborview, testified she treated Stevens's right eye injury in the emergency room. She noticed active bleeding coming from Stevens's eyelid. Stevens reported he received the injury from being kicked in the face. Dr. Ho discovered a full-thickness laceration to Stevens's eyelid and repaired the wound by suturing it closed.

Snohomish County Sheriff Deputy Gabriel Cimino investigated Stevens's assault claim after he returned from Harborview. Deputy Cimino saw that Stevens's eye was still oozing a "pinkish-colored fluid" despite the sutures, spoke to Stevens about what occurred, and photographed his injuries.

After the State rested, Baker offered exhibit 8, a 20-page set of Stevens's unredacted medical records, as substantive evidence. The State objected to the admissibility of the records as hearsay and impermissible impeachment under ER 613(b). Baker's attorney then withdrew the offer, conceding exhibit 8 was inadmissible. Defense counsel, however, asked the court to be permitted to question one of Stevens's treating physicians about statements attributable to Stevens contained in the medical records, contending the statements were appropriate impeachment evidence as prior inconsistent statements. Defense counsel did not ask to recall Stevens to confront him with the ostensible prior inconsistent statements.

The trial court ruled that two statements documented in exhibit 8 were inadmissible under ER 613(b): "The patient reports that he entered his cell earlier

this afternoon when his cellmate assaulted him" and "During this period, he believes that he was hit in the extremity abdomen [sic] and chest, after which time officers intervened." The trial court informed the parties that Baker could use other statements attributed to Stevens because they were admissible as statements made for purposes of medical diagnosis and treatment.

Baker then called Dr. Elizabeth Rosenman, an emergency medicine physician at Harborview, as his first witness. After reviewing and identifying Stevens' medical records in exhibit 8, Dr. Rosenman testified she was the attending physician on the night of Stevens' admission and supervised a resident physician who treated Stevens in the emergency department. Although Dr. Rosenman recalled speaking to Stevens, she could not recall the content of any conversation with him. Nor did she recall asking Stevens how the assault occurred. Defense counsel did not ask Dr. Rosenman about any statements attributable to Stevens in the medical records.

Baker testified and disputed Stevens's version of events. He stated Stevens began talking loudly when they returned from lunch. According to Baker, when Baker told him to quiet down, Stevens said something "sideways." Baker then described the following:

> I told him, I says if you got a problem, why don't you do something about it because I'm not going to do nothing to you because we're both sitting in here, and he jumped off the bunk at me. When he came off the bunk, as he was coming at me, I took him to the ground. I pinned him to the ground. And I said, look, I'm not playing with you. I'll hurt you. And he said he had enough. But as he hit the ground, we kind of wrestled, but he hit something. He hit something with his glasses. That's what his eye injury came from, his glasses, not from me, because I didn't hit him with my hands. I didn't touch him. I didn't choke him. I didn't kick him. I didn't do

nothing. He said he had enough. And then we talked about it. I said, look, they're going to come up here and see all of these [sic] blood, because he started to bleed.

Baker denied preventing Stevens from calling for help. Baker was not injured in the altercation and confirmed that Stevens never struck him and "didn't have a chance to." Baker said he only sought "[t]o protect myself because [Stevens] came at me and I just automatically feared that I was going to get hurt or something . . . So I grabbed him and took him down." Baker rested without recalling Stevens.

During closing argument, Baker argued Stevens was not credible because his version of the assault had changed over time. He asked the jury to judge Stevens's credibility and find that Baker's version of the incident made more sense than the story Stevens recounted during trial.

The jury rejected Baker's self-defense claim and found him guilty. He stipulated that the offense was committed on community custody.

At sentencing, in addition to incarceration, the court imposed a $500 victim assessment and signed a judgment containing the following provision: "The financial obligations imposed in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments. RCW 10.82.090."

## ANALYSIS

Baker raises several challenges to his judgment and sentence which we address in turn.

## Impeachment Evidence

Baker first argues the trial court erroneously excluded Stevens's prior inconsistent statements, depriving him of the constitutional right to present a defense. We disagree.

Washington courts use a two-step standard to review a claim that an evidentiary ruling violated a defendant's right to present a defense. State v. Arndt, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). We first review a trial court's evidentiary ruling for abuse of discretion. State v. Darden, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002). We then review de novo whether that ruling violated the defendant's right to present a defense under the Sixth Amendment to the United States Constitution and article I, § 22 of the Washington state constitution. State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

Baker contends the trial court abused its discretion in excluding statements Stevens made to his medical providers because they were admissible as prior inconsistent statements. A witness's credibility may be impeached with a prior inconsistent statement. State v. Classen, 143 Wn. App. 45, 59, 176 P.3d 582 (2008). But a prior inconsistent statement is not admissible in the absence of a proper foundation. State v. Horton, 116 Wn. App. 909, 914, 68 P.3d 1145 (2003). To lay this foundation, a party must comply with ER 613(b), which provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2).

Before a party may introduce a prior inconsistent statement of a victim through extrinsic evidence, the party must either call the statement to the victim's attention while he is on the stand or arrange for the victim to remain in attendance after testifying to be given the opportunity to explain or deny it. Horton, 116 Wn. App. at 916 (citing State v. Johnson, 90 Wn. App. 54, 70, 950 P.2d 981 (1998)).

Here, Baker did not confront Stevens with any prior inconsistent statements he made to the medical providers during cross-examination. Nor did Baker reserve the right to recall Stevens to lay the impeachment foundation. Because Baker failed to lay the necessary foundation under ER 613(b) to introduce the two statements at issue, the trial court did not abuse its discretion in excluding them.

Although the constitutional right to present a defense includes the right to confront and cross-examine witnesses, Darden, 145 Wn.2d at 620, the right to cross examine witnesses is not absolute. Jones, 168 Wn.2d at 720. The right to present a defense "does not extend to the introduction of otherwise inadmissible evidence." State v. Aguirre, 168 Wn.2d 350, 363, 229 P.3d 669 (2010) (citing State v. Otis, 151 Wn. App. 572, 578, 213 P.3d 613 (2009)).

Because Stevens's prior statements to medical providers were inadmissible, excluding these statements did not violate his right to present a defense.

### Ineffective Assistance of Counsel

Baker alternatively argues that his trial counsel was ineffective by failing to lay the necessary foundation to admit this impeachment evidence. The record, however, does not support this claim.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Because constitutional ineffective assistance of counsel claims raise mixed questions of law and fact, our review is de novo. State v. Birch, 151 Wn. App. 504, 518, 213 P.3d 63 (2009).

To establish a claim for ineffective assistance of counsel, the defendant must show "(1) counsel's representation was deficient, that is, it fell below an objective standard of reasonableness and (2) there was prejudice, measured as a reasonable probability that the result of the proceeding would have been different." State v. Humphries, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014). "If either part of the test is not satisfied, the inquiry need go no further." State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

"When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." Kyllo, 166 Wn.2d at 863. There is a strong presumption of effective assistance, which "can be overcome only by a showing of deficient representation based on the record established in the proceedings below." State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). The defendant bears the burden of showing "in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." Id.

Baker's claim of ineffective assistance fails because he cannot show that his counsel's representation was deficient or that he was prejudiced by it. First, Baker points to nothing in the record that demonstrates the "absence of legitimate strategic or tactical reasons" why his counsel did not follow through in efforts to impeach Stevens. There were only two statements excluded by the court pending the laying of a proper foundation. Neither statement exculpated Baker. And both statements were somewhat ambiguous as recorded by the medical providers. On review of this record, counsel could have strategically decided the value of this evidence for impeachment purposes was limited and did not justify recalling Stevens to the stand to be confronted by the statements. A trial attorney could reasonably have concluded that the risk of putting Stevens back on the stand to explain these two statements might reinforce, rather than undercut, his credibility in the eyes of the jury. We cannot conclude the decision not to recall Stevens was deficient performance.

Because Baker has not demonstrated deficient legal representation, we need not address his claim of prejudice.

<u>Legal Financial Obligations</u>

Baker argues, and the State concedes, that the trial court erred by including an interest accrual provision for nonrestitution legal financial obligations (LFOs) in his judgment and sentence. The parties are correct. Interest cannot accrue on such LFOs as of June 7, 2018. RCW 10.82.090(1); <u>State v. Ramirez</u>, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). Thus, we remand to the trial court to strike the interest accrual provision on Baker's LFOs.

Statement of Additional Grounds for Review

In a pro se Statement of Additional Grounds (SAG), Baker claims that he received ineffective assistance of counsel for several more reasons. He appears to argue that his defense counsel (1) failed to obtain his medical records in time for the trial court to consider them at sentencing, (2) did not inform him of the right to have counsel or an expert present during a mental health evaluation, and (3) told the prosecutor what he said during the mental health evaluation, violating his rights against self-incrimination.

The record does not include a copy of Baker's medical records or a report summarizing his mental health evaluation. Because Baker's SAG claims rely on matters outside the record, we do not consider them on direct appeal. McFarland, 127 Wn.2d at 338 n. 5 (declining to consider matters outside the record on an ineffective assistance of counsel appeal and holding that "a personal restraint petition is the appropriate means of having the reviewing court consider matters outside the record").

We affirm Baker's judgment and sentence, but remand to strike the interest accrual provision on his LFOs.

Andrus, A.C.J.

WE CONCUR:

Appelwick, J.

- 11 -